IN THE MATTER OF JOHN FERRIS, PETITIONER-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 7, 1981—Decided January 19, 1981.

Before Judges MATTHEWS, MORTON I. GREENBERG and ASHBEY.

*Richard V. Jones* argued the cause for appellant (*Stryker, Tams & Dill*, attorneys).

*Robert M. Jaworski*, Deputy Attorney General, argued the cause for respondent (*John J. Degnan*, Attorney General, attorney; *Stephen Skillman*, Assistant Attorney General, of counsel).

The opinion of the court was delivered by

MORTON I. GREENBERG, J. A. D.

Appellant was arrested for driving under the influence of intoxicating liquors on July 20, 1978 in the Borough of Bernardsville. *N.J.S.A.* 39:4–50. Following his arrest he was taken to police headquarters. The arresting officer requested that he consent to a breathalyzer examination. The request was appropriate if the officer had reasonable grounds to believe appellant was driving under the influence of alcoholic beverages since by operation of his vehicle on a public road appellant impliedly consented to a breath sample being taken to determine the content of alcohol in his blood. *See N.J.S.A.* 39:4–50.2. Appellant answered that "I will not take any test until I see my attorney." He does not deny that his answer constituted a refusal to take the test. *See State v. Pandoli*, 109 *N.J.Super.* 1 (App.Div.1970). He was subsequently charged in the municipal court of driving under the influence of intoxicating liquors but was found not guilty. The arresting officer duly reported appellant's refusal to take the test to the Division of Motor Vehicles. *N.J.S.A.* 39:4–50.4. The division then sent appellant a notice of proposed suspension for failure to take the test. *Ibid.* Appellant objected and requested a hearing on the proposed suspension.

At the hearing the arresting officer described the circumstances of the arrest and the factors that led him to believe appellant was under the influence of intoxicating liquors. He also stated that he was not a breathalyzer operator and that appellant had refused to submit to a breathalyzer until he could see his attorney. Appellant also testified. He indicated that he had two drinks earlier in the day and that he had been physically exhausted at the time he was stopped. The hearing officer found that there were reasonable grounds to believe that appellant had been under the influence of alcohol and therefore filed a written report recommending to the director, Division of Motor Vehicles, that he suspend appellant's driver's license.

Appellant filed exceptions to the report of the hearing officer. He asserted, through counsel, "There is no evidence that a qualified breathalyzer operator was available in the station or anywhere in the vicinity." He thus claimed that it was unfair to suspend his license for failure to take a test since there was no evidence that the test could have been administered. He also challenged the adequacy of the evidence that he was under the influence of intoxicating liquor.

In a written decision the director found that the arresting officer had reasonable grounds to believe that he could arrest appellant for driving under the influence of intoxicating liquor. He further held that nothing in the implied consent law required a showing by the State as a prerequisite to suspension of appellant's driving privileges of the presence of a qualified operator when consent was requested by the police and refused by appellant. Thus appellant's driving privileges were suspended for 90 days and he was required to complete a program of alcohol rehabilitation or education.

Appellant appealed to this court. He argues that *N.J.S.A.* 39:4-50.3 requires that a qualified operator administer the test and that his failure to take the test in the absence of a showing that such an operator was present should not be the basis for suspension of his driving privileges.[1] He further asserts that the arresting officer did not have reasonable grounds to believe that he was operating under the influence of intoxicating liquors and that accordingly the suspension was unwarranted.

*N.J.S.A.* 39:4-50 provides that it unlawful for a person to operate a motor vehicle if he is under the influence of intoxicating liquor. *N.J.S.A.* 39:4-50.1 establishes certain presumptions with respect to whether a driver was under such influence. These presumptions are based on percentages of alcohol, by

[1]The record is silent on whether an operator was present. It simply shows that the arresting officer was not a qualified operator. But in view of the result we reach the presence or absence of such an operator is not material.

weight, in his blood. In order that this important evidence be available in prosecutions for driving under the influence of intoxicating liquor, *N.J.S.A.* 39:4–50.2 provides that a driver of a vehicle shall be deemed to have consented to the taking of samples of his breath for the purpose of making chemical tests to determine the content of alcohol in his blood. A driver has procedural protections, however, which must be observed before, during and after the administration of the test. The test is required to be taken only ". . . at the request of a police officer who has reasonable grounds to believe that the person has been operating a motor vehicle in violation of the provisions of *R.S.* 39:4–50." *N.J.S.A.* 39:4–50.2. The test must be given according to methods approved by the attorney general by an operator certified by him. *N.J.S.A.* 39:4–50.3. A record of the result of the test must be made by the police and supplied to the driver at his request. A driver is permitted to have tests made by a person of his choosing. *N.J.S.A.* 39:4–50.2.

If the driver refuses to take the test the arresting officer is required to file a sworn report of the refusal with the director of the Division of Motor Vehicles. If it appears from the report that the officer acted in accordance with the implied consent law the director is obliged to suspend the driver's license unless the driver requests a hearing. If, as here, a hearing is requested the director shall determine at the hearing ". . . whether the arresting officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle on the public highways or quasi-public areas of this State while under the influence of intoxicating liquor, whether the person was placed under arrest, and whether he refused to submit to the test upon request of the officer." If such a showing is made the driver's license must be suspended. *N.J.S.A.* 39:4–50.4.

Even though the Legislature has required that a breathalyzer test administered at the request of the police be given only by a qualified operator the statute does not, by its express terms, require that the operator be present when the request to take the test is made. Thus, if appellant's argument is to be accepted

we will be obliged to infer a prerequisite to suspension in addition to those specified in *N.J.S.A.* 39:4–50.4. We see no reason to do so. It is certainly possible that a qualified operator may not be present when the request to the driver is given. Yet if the driver consents an effort to find such an operator may be made at that time. We were told by the deputy attorney general at oral argument that police departments will often assist each other in such cases by allowing qualified operators from one police department to administer tests for other departments. Appellant did not challenge this assertion. If we accept appellant's argument, then in the future police departments, after a refusal, will be required to determine whether an operator is available from its own force or from another department even though the test will not be administered. The law ought not to require such a useless act. *See Collins Realty Co. v. Sale,* 104 *N.J.Eq.* 138, 140 (E. & A.1928).

We recognize that it could be asserted that the driver when asked to take a test when a qualified operator cannot be found is asked to do a useless act by answering the question since regardless of his answer the test will not be given. Yet it is quite apparent that the burden on him to answer a question is not significant when compared to the task placed on the police to find an operator if one is not present. Further, at the time when the driver is asked to take the test it would not ordinarily be known that the answer is useless because an affirmative response from the driver could trigger a search for an operator.

We reach our conclusion on the basis of an interpretation of our statute. We note additionally that the result is in accord with authority in other jurisdictions under similar laws. *See Boyle v. Pennsylvania,* 19 *Pa.Cmwlth.* 22, 339 *A.2d* 834 (Cmwlth. Ct.1975); *Vinal v. Petit,* 112 *R.I.* 787, 316 *A.2d* 497 (Sup.Ct.1974).

Our decision is not inconsistent with *In re Arndt,* 67 *N.J.* 432 (1975). There, the Supreme Court accepted the appellant's argument that a long delay in the institution of suspension proceedings by the director of the Division of Motor Vehicles

after notification of the driver's refusal to submit to a blood chemical test precluded a suspension of his license. An additional point raised on appeal in *Arndt* was that there was no showing that an operator was present when the refusal was given. The court did not determine whether the absence of the operator barred suspension since it determined that "... the evidence adduced warrants a finding that the officer was present." 67 *N.J.* at 435.

After a review of the record we reject appellant's argument that the arresting officer did not have reasonable grounds to believe that he was operating the vehicle while under the influence of intoxicating liquors. *R.* 2:11–3(e)(1)(D).

Affirmed.