STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. WILLIAM JOSEPH COOPER AND ROBERT PAUL MURFITT, DEFENDANTS-APPELLANTS.

Argued February 18, 1969—Decided July 1, 1969.

*Mr. Harold N. Springstead,* Assistant Prosecutor, argued the cause for respondent (*Mr. Guy W. Calissi,* Bergen County Prosecutor, attorney).

*Mr. Gerald T. Foley, Jr.* argued the cause for appellants (*Mr. Richard Newman,* Deputy Public Defender, attorney).

The opinion of the court was delivered by
HANEMAN, J.  Defendants applied separately to the Appellate Division for leave to appeal as indigents from separate judgments of the Bergen County Court denying their respective petitions for appointment of counsel and for post conviction relief.  The Appellate Division granted defendants leave to appeal, denied them counsel and dismissed their appeals as patently frivolous and without merit.

Defendants then filed individual petitions for certification to this Court. We granted leave to each defendant to appeal and ordered the appeals consolidated. 52 *N. J.* 169 (1968).

The undisputed facts are as follows: On March 30, 1960, defendants and one Joseph Michael Moon who does not appeal, were indicted in the United States District Court for the District of New Jersey, on two counts: (1) for robbery of money of the River Edge, New Jersey, Savings and Loan Association, in violation of 18 *U. S. C. A.* § 2113(a), and (2) for putting the life of the bank president, W. Sheldon Davis, in jeopardy by use of a dangerous weapon, to wit, a firearm, in violation of 18 *U. S. C. A.* § 2113(d). On May 31, 1960, in the course of trial, defendants pleaded guilty to the indictment. On July 1, 1960, they each received ten year terms on each count, the terms to run concurrently.

Two weeks before the imposition of the federal court sentences, two indictments were returned in Bergen County against each of the defendants. The first, and the one involved here, charged them with feloniously carrying and possessing a dangerous weapon, to wit, a gun, with intent to use it unlawfully against another, on February 27, 1959 in River Edge, New Jersey, contrary to *N. J. S.* 2*A*:151–56. The second charged them with kidnapping Davis on the same date. Defendants pleaded not guilty to the first indictment on July 12, 1960, but retracted this plea and pleaded guilty on November 30, 1962. The second indictments, charging kidnapping, were then dismissed. On January 4, 1963, they were each sentenced to the New Jersey State Prison for nine years, 364 days to ten years, the sentences to run consecutively to the federal sentences they were then serving.

Four years later, defendants filed the above mentioned petitions for post-conviction relief. (By this time they had been released by the federal authorities into state custody to begin their sentences.)

Although defendants raised various grounds for reversal in both courts below, only two appear in the petition for

certification filed here by the Public Defender. (The balance defendants have raised *pro se*.) The first ground for reversal urged by the Public Defender is that the sentences were arbitrary and excessive and therefore should be vacated; the second, that the state prosecution following the federal conviction placed defendants twice in jeopardy for the same offense. We shall discuss these grounds in that order.

I

*Are the sentences arbitrary, excessive and illegal because there was a difference of only one day in the minimum and maximum terms?*

■ As above stated, defendants were sentenced to nine years, 364 days to ten years. The thrust of their argument is that these sentences are arbitrary. They reason that because the minimum sentence has a direct bearing on the length of time a convict must serve before being eligible for parole, the statutory provision requiring that a minimum and a maximum sentence be imposed, *N. J. S.* 2*A*:164–17, is for the purpose of parole. They argue that the imposition of the type of sentence here imposed is in effect an evasion of the parole statute (*N. J. S. A.* 30:4–123.1, *et seq.*) and therefore arbitrary and an abuse of discretion.

In order to assay the merits of defendants' arguments it is necessary to ascertain the origin and purposes of the minimum-maximum sentence mandate and its relation to parole. We proceed first to consider the history of sentencing. In *State v. Moore*, 21 *N. J. Super.* 419 (*App. Div.* 1952), in tracing the history of sentencing, the court said:

"The common law punished treason and felony with death, corruption of blood, loss of dower and forfeiture of lands, goods and chattels and, on conviction of misdemeanor, the punishment was that of fine and imprisonment, in the discretion of the court. *O'Regan and Schlosser, Criminal Laws of New Jersey, p.* 128, *sec.* 113. In 1898, the Legislature adopted 'An Act for the punishment of crimes (Revision of 1898),' *L.* 1898, *c.* 235, *p.* 794, and by *sec.* 217, provided that the penalty of one convicted of a high misdemeanor 'shall be punished by a fine of not exceeding two thousand dollars, or by imprisonment.

with or without hard labor, as the court may direct, for any term not exceeding seven years, or both,' and by *sec.* 218, one convicted of a misdemeanor, the imposition of a fine not exceeding $1,000, or by imprisonment, with or without hard labor, as the court may direct, for any term not exceeding three years, or both. In 1911 (*L.* 1911, *c.* 191, *p.* 356), the 1898 act (*L.* 1898, *c.* 237, *p.* 866), was amended to provide that a sentence to State Prison shall set forth a maximum term which shall be equal to the limit of imprisonment as provided in the 1898 act, its supplements or amendments, for the crime for which the prisoner was sentenced and likewise set forth a minimum term of not less than one year and not more than one-half of such maximum term." (at *pp.* 426–427).

Chapter 214 of the Laws of 1914 changed this to require that the minimum be not more than two-thirds of the maximum, and *L.* 1922, *c.* 50, allowed the maximum to be less than or equal to the limit of imprisonment provided for in the 1898 Act. *L.* 1932, *c.* 166 did away with most of the limitations of the prior law, providing merely that

"All sentences to the New Jersey State Prison shall hereafter be for a maximum and minimum term, except sentences for life, but the maximum term shall not be in excess of the maximum term prescribed by law for the offense for which the offender was convicted. The minimum term shall not be less than one year."

Despite further amendments, *i. e., L.* 1951, *c.* 99, *L.* 1953, *c.* 276, *L.* 1954, *c.* 174, the purport of the provision with which we are here particularly concerned, remained static. See *N. J. S.* 2A:164–17.

We turn next to the subject of parole. In 1911, the Board of Inspectors of the State Prison was given, subject to the approval of the Governor, power to parole a prisoner at the expiration of his minimum sentence. *L.* 1911, *c.* 191. This power was given by the same Act which first required the imposition of a minimum and maximum sentence. (Prior to this Act, parole eligibility had been set at one-half the sentence minus commutation time. See 2 *Compiled Statutes,* §171, *p.* 1877.) Chapter 166 of the Laws of 1932 authorized the Board of Managers of the New Jersey State Prison to parole any prisoner at the expiration of the minimum sen-

tence, but *L.* 1936, *p.* 194, § 2 increased the required time to be served for parole eligibility of second, third and fourth offenders to respectively, one-third, one-half or three-quarters of the imposed maximum. When *L.* 1948, *c.* 84, created the State Parole Board it provided:

"10. No inmate of a penal or correctional institution serving a sentence for a fixed minimum and maximum term shall be eligible for consideration for release on parole until he has served his minimum sentence, less commutation time therefrom for good behavior and for diligent application to work assignments or one-third of his fixed maximum sentence without regard to commutation time, whichever occurs sooner, subject to the provisions of section twelve hereof."

Section 12 declared that second, third and fourth offenders were declared eligible for parole upon serving respectively, one-half, three-fourths and the full maximum sentence less time allowance for diligent performance of work. Currently, commutation time is applied to both the minimum and one-third of the maximum in the case of a first offender. *L.* 1956, *c.* 102, § 1. See *N. J. S. A.* 30:4–123.10. Second, third and fourth offenders now serve one-half, two-thirds and four-fifths of their maximum sentences, respectively, before becoming eligible for parole. *L.* 1955, *c.* 15. See *N. J. S. A.* 30:4–123.12. Despite subsequent amendments, the temporal provisions for parole eligibility of first offenders have remained static since 1956 and for multiple offenders since 1955.

It is apparent that under the current statutory scheme the requirement for the imposition of a minimum sentence is important solely for parole purposes. In that connection it has an effect only in the case of a first offender and then only when the imposed minimum term is less than one-third of the maximum. Defendants acknowledge that they do not fall into the category of first offenders. The minimum, therefore, has no effect on their parole eligibility. Even if they were first offenders, imposition of a high minimum forcing them to serve one-third of their maximum, minus commutation time, before eligibility, does not subvert the power of the parole

board. For a first offender, as above noted, any minimum in excess of one-third of the fixed maximum has no bearing on parole eligibility as time for eligibility cannot exceed one-third of that maximum. It follows that a minimum, regardless how greatly in excess of one-third of the fixed maximum, does not increase the time which must be served for parole eligibility. The Legislature permitted the control of the least prison time to be served by a defendant to remain to some extent in the sentencing judge by providing for parole eligibility for a first offender at one-third or less of the maximum imposed by the judge. The imposition of a minimum sentence in excess of one-third of the imposed maximum for a first offender is a meaningless and futile gesture. Therefore any error committed in this regard does not constitute reversible error, *State v. Moore*, 21 *N. J. Super.* 419 (*App. Div.* 1952); *State v. Janiec*, 25 *N. J. Super.* 197 (*App. Div.* 1953), to the contrary notwithstanding.

## II

■ *Does the bar of double jeopardy prevent a trial and conviction for a state offense following a federal conviction of the same or virtually the same offense?*

Defendants argue that after conviction of a federal crime, the Fifth Amendment through the Fourteenth Amendment of the United States Constitution bars a subsequent state indictment and trial for the commission of a crime, arising out of the same act or transaction.

*Title* 18, *U. S. C. A.* § 2113(d) reads:

"Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

*N. J. S.* 2A:151–56 reads:

"Any person who attempts to use unlawfully against another. or who carries or possesses with intent to use unlawfully against another,

any instrument or weapon enumerated in section 2A:151-5 of this Title, or any other dangerous or deadly instrument or weapon, is guilty of a high misdemeanor, and shall be punished by a fine of not more than $5,000.00, or by imprisonment for not more than 10 years, or both."

It is therefore seen, although not verbatim identical, the two statutes for violation of which defendants were indicted, are most similar. Additionally, the same state of facts here gave rise to both the federal and state indictments and convictions.

The converse of the present question, *i. e.,* whether a federal prosecution subsequent to a state prosecution was inhibited by the Fifth Amendment was presented to the Supreme Court in *United States v. Lanza,* 260 *U. S.* 377, 43 *S. Ct.* 141, 67 *L. Ed.* 314 (1922). A unanimous court there held:

"We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject-matter within the same territory. Each may, without interference by the other, enact laws to secure prohibition, with the limitation that no legislation can give validity to acts prohibited by the amendment. Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other."

In *Abbate v. United States,* 359 *U. S.* 187, 79 *S. Ct.* 666, 3 *L. Ed. 2d* 729 (1959), the court again had before it a state prosecution followed by a federal prosecution and again sustained the federal constitutionality of such a proceeding. The companion case of *Bartkus v. Illinois,* 359 *U. S.* 121, 79 *S. Ct.* 676, 3 *L. Ed. 2d* 684 (1959) held that a factual complex the reverse of *Lanza, supra,* and *Abbate, supra,* and identical with the facts *sub judice, i. e.,* a state prosecution following a federal prosecution, did not violate the United States Constitution.

A contrary rule could result in an unseemly race between the federal and state authorities to obtain early jurisdiction. We are aware of the problem of ideological differences between the federal government and some of the states in determining the gravity of various criminal offenses. A pro-

hibition against a second trial and indictment could well eventuate in a frustration of either the national or state policy and law enforcement. Nor do we ignore the effect of a second sentence. Realistically, a judge should and undoubtedly would consider the first sentence in imposing a second. We have no doubt that the impact of an additional sentence will be weighted by the court in imposing an additional penalty and that due allowance will be made for the first sentence. We conclude that the state sentences here imposed are not inhibited by the United States Constitution.

Defendants argue additionally that the federal-state order or prosecution violates that portion of *Art.* 1, *par.* 11 of the *N. J. Constitution* which reads, "No person shall, after acquittal, be tried for the same offense." In *State v. Cioffe,* 128 *N. J. L.* 342 (*Sup. Ct.* 1942), affirmed 130 *N. J. L.* 160 (*E. & A.* 1943). The court held:

"It is undisputed that the trial in the Federal Court was for the same offense and it is contended that having been acquitted in that tribunal the defendants could not be put to double jeopardy and tried again in a state court. This contention is not sound. The offense in question at once violated the Federal Criminal Code in that the bank whose money was stolen was a National bank; and it also offended against the Crimes Act of this state. Two different sovereignties were offended. The acquittal or conviction in the criminal tribunal of one sovereignty creates no barrier to prosecution by the other for a crime arising out of the same act. *Cf. Hebert v. Louisiana,* 272 *U. S.* 312, 47 *S. Ct.* 103, 71 *L. Ed.* 270, 48 *A. L. R.* 1102; *United States v. Lanza,* 260 *U. S.* 377, 43 *S. Ct.* 141, 67 *L. Ed.* 314. The peace and dignity of each government, state and national, was offended and each is competent independently to deal with the offenders and punish in case of conviction. See, also, 12 *U. S. C. A.* § 588d." (at *pp.* 347–348).

We find no reason to supersede or change the above conclusion. Nor are we singular in respect to this conclusion. As stated in *Bartkus, supra,*

"Of the twenty-eight States which have considered the validity of successive state and federal prosecutions as against a challenge of

violation of either a state constitutional double-jeopardy provision or a common-law evidentiary rule of *autrefois acquit* and *autrefois convict*, twenty-seven have refused to rule that the second prosecution was or would be barred." 359 *U. S.* at 134, 79 *S. Ct.* at 684, 3 *L. Ed. 2d* at 693.

Defendants have in a *pro se* brief raised various other grounds for reversal. We find no merit in any such grounds. Affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.