STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JAMES GOODMAN, DEFENDANT-APPELLANT.

Argued September 14, 1982—Decided February 10, 1983.

*Mark H. Friedman,* Assistant Deputy Public Defender, argued the case for appellant (*Joseph H. Rodriguez,* Public Defender, attorney).

*Miriam Kahan Brody,* Assistant Prosecutor, argued the cause for respondent (*George L. Schneider,* Essex County Prosecutor, attorney).

The opinion of the Court was delivered by

HANDLER, J.

The New Jersey Code of Criminal Justice directs that its procedural provisions shall govern any criminal case involving a crime committed prior to the date upon which the Code became effective and pending on that date. *N.J.S.A.* 2C:1–1c. The Code also imposes a statutory bar to the criminal prosecution of conduct that was the basis of a conviction or acquittal in a prior federal criminal proceeding. *N.J.S.A.* 2C:1–11a. The novel question presented by this case is whether this statutory bar constitutes a "procedural provision" that can be applied to bar prosecution of a criminal case that was pending when the New Jersey Code of Criminal Justice became effective.

The defendant seeking the benefit of the statutory bar in this case is James Goodman who was charged with committing a series of State and federal crimes. He was first indicted by the Essex County Grand Jury on January 19, 1978 for possession of a knife. He was next indicted in the United States District Court on February 1, 1978 for the federal crimes of bank robbery and assault with a deadly weapon. Goodman was then indicted by the State on March 20, 1979 for murder while armed, armed robbery, atrocious assault and battery, and conspiracy to commit robbery. Finally, on March 27, 1979, defendant was charged by the State with robbery, robbery while armed, and possession of a weapon. This last series of charges was based on the identical conduct that was the basis of the federal bank robbery indictment of February 1, 1978.

On June 4, 1979 defendant appeared in federal district court and pleaded guilty to the federal bank robbery charge. The plea bargain contemplated that the associated charge of assault with a deadly weapon would be dismissed at sentencing. Fourteen days later, on June 18, 1979, defendant, as part of a plea bargain, entered *retraxit* pleas of guilty to all of the State charges arising out of the bank robbery and the State agreed to the imposition of concurrent sentences on these charges and to the dismissal of all other outstanding charges. Thereafter, on August 20, 1979, defendant was sentenced by the federal court for the bank robbery to a term of 10 years in prison. On September 26, 1979 defendant was sentenced by the State court on the charges relating to the bank robbery. He received concurrent terms aggregating seven to ten years, which, however, were to run consecutively to the federal prison term.

A notice of appeal was filed on December 4, 1979. During the pendency of the appeal, on July 8, 1980, defendant moved for a limited remand on the issue of whether his State conviction and sentence were barred under *N.J.S.A.* 2C:1–9 of the Code on the theory that the statutory bar against dual prosecutions constituted a procedural provision applicable to his case under *N.J. S.A.* 2C:1–1. The State contested the remand, asserting, nonetheless, that the appropriate Code reference should have been to *N.J.S.A.* 2C:1–11, which bars successive prosecutions by the federal and state governments. The motion was granted on August 11, 1980, with the direction that the court below consider defendant's claims under "all applicable provisions" of the new Code.

The remand hearing was held on December 23, 1980. On January 9, 1981 the judge [1] issued a written decision, refusing to apply the jeopardy bar of *N.J.S.A.* 2C:1–11 to defendant's case. The court determined that the jeopardy bar of *N.J.S.A.* 2C:1–11a

---

[1]The judge who conducted this remand hearing was not the same judge who accepted and entered defendant's guilty pleas and imposed sentence on the bank robbery charges, the latter having died on November 10, 1980.

was a procedural provision of the Code and that defendant's case was "pending" on the effective date of the enactment of the Code. He noted, however, that the procedural provisions of the Code by the terms of *N.J.S.A.* 2C:1–1c(1) govern pending criminal cases only if "justly applicable." He concluded that the statutory bar was not "justly applicable" because defendant had knowingly and voluntarily entered into a plea agreement that entailed the dismissal of a number of other charges, including murder while armed, and he was fully aware of the possibility of consecutive state and federal sentences.

On May 13, 1981 defendant again moved before the Appellate Division for a limited remand, based on the judge's actions in taking testimony without affording defendant the opportunity to be present or give his own testimony. The Appellate Division denied the motion on June 2, 1981 and later affirmed defendant's convictions and sentence substantially for the reasons expressed in the trial court's opinion. Defendant then successfully petitioned this Court for certification. 91 *N.J.* 181 (1982).

*N.J.S.A.* 2C:1–11, the successive jeopardy bar, which defendant seeks to invoke to bar his prosecution, provides:

> When conduct constitutes an offense within the concurrent jurisdiction of this State and of the United States, a prosecution in the District Court of the United States is a bar to a subsequent prosecution in this State under the following circumstances:
>
> a. The first prosecution resulted in an acquittal or in a conviction, or in an improper termination as defined in section 2C:1–9 and the subsequent prosecution is based on the same conduct, unless (1) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil or (2) the offense for which the defendant is subsequently prosecuted is intended to prevent a substantially more serious harm or evil than the offense of which he was formerly convicted or acquitted or (3) the second offense was not consummated when the former trial began ...

*N.J.S.A.* 2C:1–1, which directs the application of the Code's procedural provisions to pending criminal prosecutions, states:

> c. In any case pending on or initiated after the effective date of the code involving an offense committed prior to such date:
>
> (1) The procedural provisions of the Code shall govern, insofar as they are justly applicable and their application does not introduce confusion or delay ...

We now hold that the statutory jeopardy bar contained in *N.J.S.A.* 2C:1–11 of the Code is a procedural provision within the meaning of *N.J.S.A.* 2C:1–1c(1) and that it can be applied to bar criminal prosecutions that were pending on the effective date of the enactment of the Code. We also hold that this statutory jeopardy bar, under the standards of *N.J.S.A.* 2C:1–1c(1), is not "justly applicable" to defendant in the circumstances of this case, and, further, that its application would introduce undue confusion and delay. We therefore conclude that *N.J.S.A.* 2C:1–11 cannot be invoked to bar defendant's conviction and sentence, and, accordingly, affirm the judgment of the Appellate Division.

I

We note, at the outset, the absence of any dispute that on the effective date of the Code's enactment, September 1, 1979, defendant's criminal prosecution was still pending. He had been found guilty of the charges relating to the bank robbery as a result of his guilty plea on June 18, 1979. He had not, however, been sentenced on these charges on September 1, 1979. In *State v. Molnar,* 81 *N.J.* 475 (1980), we viewed the term "pending case" to embrace undecided appeals as well as ongoing trials. *Id.* at 488. Clearly defendant's case was "pending" under *N.J. S.A.* 2C:1–1c(1) on the effective date of the Code.

It is particularly important to make clear at the outset that this case does not pose a confrontation between the judiciary and other branches of government as to whether the particular exercise of a governmental power properly belongs to the judicial branch to the exclusion of the others. *E.g., Winberry v. Salisbury,* 5 *N.J.* 240 (1950), *cert.* den., 340 *U.S.* 877, 71 *S.Ct.* 123, 95 *L.Ed.* 638 (1950); *Busik v. Levine,* 63 *N.J.* 351 (1973); *State v. Leonardis,* 71 *N.J.* 85 (1976) *(Leonardis* I); *State v. Leonardis,* 73 *N.J.* 360 (1977) *(Leonardis* II). Nor does it entail the identification or proper classification of governmental powers. *E.g., N.J. General Assembly, 1982,* 90 *N.J.* 376 (1982); *Enourato v. New Jersey Building Auth.,* 90 *N.J.* 396 (1982). *See also Knight v.*

*Margate,* 86 *N.J.* 374 (1981). The issue is not the extent to which the exercise of power by one branch of government can be accommodated by another branch. *E.g., Enourato v. New Jersey Building Auth.; Knight v. Margate.* Finally, the case before us, dealing with the Legislature's codification of the criminal laws, does not bring into question the validity or propriety of the exercise of legislative power. Rather, the issue is strictly one of statutory interpretation and application— whether a particular provision of the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–11, according to its plain terms or by the ascertained intention of the Legislature, is to be construed and given effect as a procedural provision within the meaning of another statutory section of the Code, *N.J.S.A.* 2C:1–1c(1).

We turn first to *N.J.S.A.* 2C:1–1c(1). In embarking upon the construction of this section, we are hamstrung by the absence of any statutory definition of the term "procedural provision." In *State v. Molnar,* we noted that the Code did not define this term or otherwise designate which of its provisions are "procedural." We observed generally that "[i]n the context of a codified criminal law, 'procedure' refers to the conduct of a 'prosecution for [an] offense,' . . . as contrasted with the 'substantive' definitions of conduct declared to be criminal." 81 *N.J.* at 488. Criminal procedure encompasses "the machinery for carrying on a suit." *State v. Mandara,* 183 *N.J.Super.* 299, 303 (App.Div. 1982). It has been described as "the legal steps through which a criminal proceeding passes, commencing with the initial investigation of a crime and concluding with the unconditional release of the offender." W. LaFave and A. Scott, *Handbook on Criminal Law* § 4 at 14 (1972). "Substantive criminal law," on the other hand, "is mostly concerned with what act and mental state, together with what attendant circumstances or consequences, are necessary ingredients of the various crimes." *Id.* § 1 at 1. *See also Mandara,* 183 *N.J.Super.* at 303; *State v. Mraovitch,* 176 *N.J.Super.* 141, 143 (App.Div.1980).

Although the Code does not provide a specific definition of "procedure," it does furnish definitions that elucidate the meaning of substantive criminal law. The Code describes the substantive criminal law in terms of the "elements of an offense" and differentiates between those that are material and those that are not. An "[e]lement of an offense" is defined under *N.J.S.A.* 2C:1–14h to include

(1) such conduct or (2) such attendant circumstances or (3) such a result of conduct as

(a) Is included in the description of the forbidden conduct in the definition of the offense;

(b) Establishes the required kind of culpability;

(c) Negatives an excuse or justification for such conduct;

(d) Negatives a defense under the statute of limitations; or

(e) Establishes jurisdiction or venue.

A "[m]aterial element of an offense" is defined by *N.J.S.A.* 2C:1–14i as

an element that does not relate exclusively to the statute of limitations, jurisdiction, venue or to any other matter similarly unconnected with (1) the harm or evil, incident to conduct, sought to be prevented by the law defining the offense, or (2) the existence of a justification or excuse for such conduct.

*N.J.S.A.* 2C:1–11 does not embrace either the "elements" or "material elements" of any criminal offense. To the extent the concept of substantive criminal law is captured in the Code by these definitions, the statutory bar would not be a substantive rule of law. Furthermore, *N.J.S.A.* 2C:1–11 does not conform to the traditional definitions of substantive criminal law. It does not describe the acts or mental states that constitute the elements of criminal action nor does it declare that particular acts are criminal. *Molnar; Mandara.* To the contrary, *N.J.S.A.* 2C:1–11 is directly concerned with the "conduct" of a criminal prosecution. *Molnar.* Although the rule can result in the foreclosure of criminal charges, it can, nonetheless, be viewed as part of the "machinery" for the management of a prosecution; it is a "procedural" step at which the prosecution may be either initiated, continued, or terminated. *Molnar; Mandara; Mraovitch.*

Consideration of the essential legislative purpose underlying *N.J.S.A.* 2C:1–11 further supports the conclusion that this provision is procedural in nature. *N.J.S.A.* 2C:1–11 represents a drastic curtailment of the "dual sovereignty" doctrine. This doctrine recognizes that separate governmental jurisdictions have concurrent power to proscribe criminal conduct and to prosecute crime; and, further, each sovereign may exercise this power without regard to whether particular conduct is or was the subject of separate criminal proceedings undertaken by another jurisdiction. *United States v. Lanza,* 260 *U.S.* 377, 43 *S.Ct.* 141, 67 *L.Ed.* 314 (1922). The doctrine has been most frequently used to permit successive prosecutions by federal and state courts. *E.g., Lanza; Bartkus v. Illinois,* 359 *U.S.* 121, 79 *S.Ct.* 676, 3 *L.Ed.*2d 684 (1959); *Abbate v. United States,* 359 *U.S.* 187, 79 *S.Ct.* 666, 3 *L.Ed.*2d 729 (1959). In *State v. Cooper,* 54 *N.J.* 330, 338 (1969), we acknowledged that the principle of dual sovereignty was firmly established in this jurisdiction, quoting *State v. Cioffe,* 128 *N.J.L.* 342, 347–48 (Sup.Ct.1942), aff'd 130 *N.J.L.* 160 (E. & A.1943) (a case, coincidentally, involving successive federal and state prosecutions arising out of a bank robbery).

Nevertheless, the dual sovereignty doctrine has engendered virile and abundant criticism. *See, e.g.,* Grant, *The Lanza Rule of Successive Prosecutions,* 32 *Colum.L.Rev.* 1309 (1932); Fisher, *Double Jeopardy, Two Sovereigns And The Intruding Constitution,* 28 *U.Chi.L.Rev.* 591 (1961); Note, *Double Prosecution by State and Federal Governments: Another Exercise in Federalism,* 80 *Harv.L.Rev.* 1538 (1967); *Waller v. Florida,* 397 *U.S.* 387, 90 *S.Ct.* 1184, 25 *L.Ed.*2d 435 (1970); *Bartkus v. Illinois,* 359 *U.S.* 121, 150, 79 *S.Ct.* 676, 695, 3 *L.Ed.*2d 684, 705 (1959) (Black, J., dissenting); *Petite v. United States,* 361 *U.S.* 529, 80 *S.Ct.* 450, 4 *L.Ed.*2d 490, (1960); *United States v. Grimes,* 641 *F.*2d 96 (3 Cir.1981); *State v. Ableman,* 72 *N.J.* 145, 148 (1977) (Pashman, J., concurring). This criticism has focused on (1) the unfairness of dual prosecutions, *see Rinaldi v. United States,* 434 *U.S.* 22, 27, 98 *S.Ct.* 81, 84–85, 54 *L.Ed.*2d 207, 212–14 (1977); *Bartkus v.*

*Illinois,* 359 *U.S.* at 150, 79 *S.Ct.* at 695, 3 *L.Ed.*2d at 705; Fisher, *supra,* at 598; (2) the importance of federal-state comity and uniformity in the administration and enforcement of the criminal laws, *see Rinaldi,* 434 *U.S.* at 27–28 & nn. 13–14, 98 *S.Ct.* at 84–85 & nn. 13–14, 54 *L.Ed.*2d at 212–13 & nn. 13–14; *Grimes,* 641 *F.*2d at 101–02; Note, 80 *Harv.L.Rev.* at 1541–42; Fisher, *supra,* at 593–94; and (3) the concern for judicial efficiency and government economy in the use of limited law enforcement resources, *see Petite,* 361 *U.S.* at 530, 80 *S.Ct.* at 451, 4 *L.Ed.*2d at 492; *Rinaldi,* 434 *U.S.* at 27, 98 *S.Ct.* at 84, 54 *L.Ed.*2d at 212. It may be inferred that the Legislature enacted *N.J.S.A.* 2C:1–11 in response to such criticism.

Unquestionably, the jeopardy bar has substantive implications particularly in its concern for individual fairness in the criminal law. This, however, does not serve to make the provision substantive rather than procedural in purpose and effect. It has been long and consistently understood that no bright line separates procedure from substance in all situations. *E.g., Molnar; Busik; Winberry.* A rule of criminal procedure may, and frequently does, have an impact upon substantive rights. *Leonardis* I; *Leonardis* II. Thus, a rule barring successive jeopardy may in a constitutional context be regarded as something different from a constitutional "procedural guarantee," and, indeed, be entitled to retroactive application. *Robinson v. Neil,* 409 *U.S.* 505, 509, 93 *S.Ct.* 876, 878, 35 *L.Ed.*2d 29, 33 (1973). However, this does not mean that in another context the rule should not appropriately be considered procedural. As aptly explained by Chief Justice Weintraub in *Busik v. Levine,* 63 *N.J.* at 365, quoting from *Hanna v. Plumer,* 380 *U.S.* 460, 471, 85 *S.Ct.* 1136, 1144, 14 *L.Ed.*2d 8, 16–17 (1965):

"The line between 'substance' and 'procedure' shifts as the legal context changes. 'Each implies different variables depending upon the particular problem for which it is used.'" One context is conflict of laws; another is retrospective application of statutes; and a third is law-making, the subject at hand.

So, too, here, the subject is "law-making." But in the context of this case the subject is not whether the law-making is within the

judicial power versus the legislative power, as in *Busik,* or the executive and legislative power, as in *Leonardis* I and II. Rather, it is whether the particular law, concededly a valid and appropriate exercise of legislative power, is "procedural" in the sense that it was intended to apply as a general rule in the implementation of the substantive criminal provisions under the Code.

It is obvious that a major purpose behind the statutory restriction against the dual sovereignty doctrine is to achieve greater efficiency and uniformity and consistency in the overall administration of the criminal justice system as well as in the conduct of individual criminal cases. Indeed, this purpose mirrors one of the dominant goals of the entire New Jersey Code of Criminal Justice. It was the objective of the Legislature in the enactment of the Code to structure a modern criminal justice system that promotes efficiency, uniformity and consistency in the administration of the criminal laws. *See* 1 *New Jersey Penal Code: Final Report of the New Jersey Criminal Law Revision Commission* v, xiv (1971); *New Jersey Code of Criminal Justice: Summary of Procedural and Sentencing Provisions of the Criminal Code* at 4 (Pamphlet prepared by Division of Criminal Justice, John J. Degnan, Attorney General, Edwin H. Stier, Director). The efficient administration of the laws and the effective management of judicial business in the public interest constitute a hallmark of procedural law. *E.g., Winberry v. Salisbury,* 5 *N.J.* at 244; *Busik v. Levine,* 63 *N.J.* at 364, 368. They are also the hallmark of the modern administration of the criminal laws in the setting of a contemporary criminal justice system. *E.g., Leonardis I; Leonardis II.*

It is clear that by the enactment of *N.J.S.A.* 2C:1–1c(1) in the Code, the Legislature sought to achieve greater efficiencies in the administration of the criminal justice system. It has done so by directing the maximum and uniform application of all of the Code's procedural rules to all cases, including those pending on the effective date of the Code's enactment. The inclusion of

*N.J.S.A.* 2C:1–11 as a procedural rule within the intendment of *N.J.S.A.* 2C:1–1c(1) fulfills this goal.[2] We are satisfied that *N.J.S.A.* 2C:1–11 should be considered a "procedural provision" under the Code consistent with the intent of the Legislature.

## II

We must next consider whether *N.J.S.A.* 2C:1–11 would be "justly applicable" in this case and whether its application would entail "confusion or delay" under the standards prescribed by *N.J.S.A.* 2C:1–1c(1).

---

[2]The procedural purpose of *N.J.S.A.* 2C:1–11 is also strongly suggested by examination of its origins. The direct source of *N.J.S.A.* 2C:1–11 is the Model Penal Code, § 1.10. *See* 1 *New Jersey Penal Code: Final Report of the New Jersey Criminal Law Revision Commission* 10 (1971). Although the Commentary to the Model Penal Code is not dispositive as to whether this section was intended as a procedural provision, the organization of the Model Penal Code is indicative of a procedural purpose. The section is included in Article I of Tentative Draft # 1, entitled PRELIMINARY, which contains provisions that are primarily procedural, namely, those regarding "Time Limitations"; "Method of Prosecution when behavior constitutes more than one crime"; and "Double Jeopardy." The organization of the New Jersey Code of Criminal Justice is similarly suggestive. *Cf. People v. Comingore,* 65 *Cal.App.*3d 670, 135 *Cal.Rptr.* 476 (Cal.Ct.App.1977), *vacated* and aff'd, 20 *Cal.*3d 142, 570 *P.*2d 723, 141 *Cal.Rptr.* 542 (1977) (recognizing the procedural nature of the jeopardy bar against prosecutions by dual sovereignties under § 793 of the California Penal Code).

Moreover, parallel treatment of the dual sovereignty prosecutorial bar in the modern criminal codes of other states also suggests that such a bar is procedural in nature: Arkansas (Ark.Stat.Ann. § 41–108 (1977)); California (Cal.Penal Code §§ 654, 656, 793, 1023 (West 1970, Supp.1982)); Colorado (Colo.Rev.Stat. § 18–1–303 (1973)); Delaware (Del.Code Ann. tit. 11, § 209 (1974)); Georgia (Ga.Code Ann. § 26–507 (1977)); Hawaii (Hawaii Rev.Stat. § 701–112 (1975)); Illinois (Ill.Ann.Stat. ch. 38, § 3–4 (Smith-Hurd 1972)); Kansas (Kan.Stat.Ann. § 21–3108 (1981)); Kentucky (Ky.Rev. Stat.Ann. § 505.050 (Bobbs-Merrill 1975)); Montana (Mont.Code Ann. § 46–11–504 (1981)); Nevada (Nev.Rev.Stat. § 171.070 (1979)); New York (N.Y.Crim.Proc.Law § 40.20 (McKinney 1981)); Oregon (Or.Rev.Stat. § 131.515 (1979)); Pennsylvania (18 Pa.Cons.Stat.Ann. § 111 (Purdon 1973)); Texas (Tex.Code Crim.Proc.Ann. art. 1.10 (Vernon 1977)); Utah (Utah Code Ann. § 76–1–404 (1978)); Washington (Wash.Rev.Code Ann.

The parties apparently assume that, if applied, *N.J.S.A.* 2C:1–11 would bar defendant's state prosecution for the armed robbery charges. This assumption was shared by the trial court and it has not been shown or otherwise argued that this position is incorrect. First, there is no question that the plea of guilty upon federal charges constituted ,criminal jeopardy. *See N.J. S.A.* 2C:1–9c; *Annot.,* 75 *A.L.R.2d* 683 (1961).[3] Hence, in terms of *N.J.S.A.* 2C:1–11, the defendant has previously been convicted of a federal offense based on the same conduct which is the subject of the state charges.

Second, the exceptions contained in *N.J.S.A.* 2C:1–11 do not appear applicable. One exception, *N.J.S.A.* 2C:1–11a(1), permits the second prosecution where "each [of the respective offenses] requires proof of a fact not required by the other." This statutory test is derived from *Blockburger v. United States,* 284 *U.S.* 299, 304, 52 *S.Ct.* 180, 182, 76 *L.Ed.* 306, 309 (1932) (dealing essentially with constitutional double jeopardy); *State v. Di Ventura,* 187 *N.J.Super.* 165, 170–71 (App.Div.1982). Here, it does not appear that the State offenses arising out of the armed bank robbery, *N.J.S.A.* 2A:141–1, 2A:151–5, 2A:151–41, require proof of any fact beyond those necessary to establish

---

§ 10.43.040 (1980)); West Virginia (W.Va.Code § 61–11–13)); Wisconsin (Wis.Stat.Ann. § 939.71 (West 1982)).

[3] At the hearing, the State erroneously believed that defendant did not plead guilty in federal court until August 20, 1979, two months after his plea before the State court, and thus claimed he was precluded from seeking the jurisdictional protections of *N.J.S.A.* 2C:1–11. The trial court accepted the State's representation as true. The court proceeded to consider whether the statute's applicability rested on which jurisdiction first initiated the prosecution. It concluded that this would lead to "an unseemly race" between federal and state authorities to obtain first jurisdiction, and that "State proceedings are precluded only when the federal prosecution results in an acquittal or a conviction prior to disposition of the State indictment by way of a guilty plea." On the mistaken assumption that the federal plea had been entered after the State court plea, it concluded that *N.J.S.A.* 2C:1–11a was inapplicable and defendant's consecutive sentence proper. Nevertheless, the court also addressed the issue of the just applicability of the bar.

the federal offenses, 18 *U.S.C.A.* §§ 2113(a), 2113(d), 2. Further, any added element that might be necessary to establish the federal character of the offense appears to relate "exclusively to jurisdiction." As such it would not qualify as a "material element of the offense" (*N.J.S.A.* 2C:1–14i) and therefore would not render the federal offense different from the state offense in terms of essential proof. *See Illinois v. Vitale*, 447 *U.S.* 410, 100 *S.Ct.* 2260, 65 *L.Ed.*2d 228 (1980).

The second standard governing the application of the bar involves a comparison of the purposes of the respective offenses. If the state offense involves "a substantially different harm or evil" (*N.J.S.A.* 2C:1–11a(1)), or if the state offense "is intended to prevent a substantially more serious harm or evil than the offense of which [the defendant] was formerly convicted or acquitted" (*N.J.S.A.* 2C:1–11a(2)), the bar should not apply. This test is designed generally "to prevent a prosecution for a minor offense from having a binding effect as to a serious offense. *Cf., State v. Bell*, 55 *N.J.* 239 (1970)." II *New Jersey Penal Code: Final Report of the New Jersey Criminal Law Revision Commission* 33 (1971). In this case, it appears that the criminal activity involved in the State's indictment is the same conduct that was subject to the federal prosecution; there is nothing in the description of the respective crimes or the sentences provided to suggest that the state offense addresses a harm or evil substantially different from or graver than its federal counterpart. *Cf. State v. Di Ventura*, 187 *N.J.Super.* at 170 (state crimes relating to arson are "much more serious" offenses than federal mail fraud).

Finally, the third exception to the application of the statutory bar governs where the subsequent offense was not consummated before the trial of the initial offense (*N.J.S.A.* 2C:1–11a(3)). It is clearly not relevant to the circumstances of this case.

The trial court here determined that the statutory bar to the state prosecution would not be "justly applicable" under *N.J.S.A.* 2C:1–1c(1). The court purported to follow *State v. Currie*,

41 *N.J.* 531 (1964), which stated that in weighing a claim of constitutional double jeopardy, "the emphasis should be on underlying policies rather than technisms. The primary considerations should be fairness and fulfillment of reasonable expectations in light of the constitutional and common law goals." *Id.* at 539.

Considerations relating to individual fairness and reasonable expectations, as under *Currie,* have some relevance in a determination of whether the statutory jeopardy bar of *N.J.S.A.* 2C:1–11 is "justly applicable" in a given case. With this focus, the pertinent inquiry is whether a defendant, when convicted of a crime, could in all fairness reasonably expect under the particular circumstances to be insulated from any further prosecution involving the same conduct. *State v. Currie,* 41 *N.J.* at 540. In the present case, the inquiry is whether, at the time defendant pleaded guilty to the federal charges of bank robbery, there was any reasonable basis for him to believe that he would not also be required to face the pending state charges for the same criminal conduct. Quite clearly, he had no such legal entitlement or reasonable expectation and acknowledged as much when he entered a guilty plea to the state charges two weeks later.

Even in cases where a defendant when entering a guilty plea to federal charges could not reasonably expect to be insulated from a later state prosecution, further prosecution might nevertheless be barred by *N.J.S.A.* 2C:1–11, because of the statute's broad remedial purposes and, especially, its concern for the unfairness of dual prosecutions. Here, however, there was no unfairness to defendant in light of the surrounding circumstances. When he chose to plead guilty to the State armed robbery charges, it was with the understanding that those charges were viable. In return for the guilty plea, the State dismissed all other charges pending against defendant encompassed in two other unrelated indictments, including murder, murder while armed, robbery, robbery while armed, atrocious assault and battery and conspiracy to commit robbery. Indeed, defendant does not claim that the plea bargain was unfair.

In addition, we are satisfied that *N.J.S.A.* 2C:1–11 should not be applied in the circumstances of this case on grounds of confusion and delay. In *Molnar* we recognized that where, as here, a criminal prosecution had been concluded at the trial level, even though pending on appeal, undue delay and confusion would be occasioned if a retrial were to result from the retrospective application of the Code's procedural provisions. Here, we are not concerned with the possible trial of only the charges that were subject to this appeal. Retroactive application of *N.J.S.A.* 2C:1–11 to bar the prosecution of the state robbery charges would entail setting aside defendant's guilty plea, revoking the unfulfilled plea bargain arrangement and resurrecting all other charges. Defendant would then either have to plead anew in the face of these revived charges or stand trial on all of the charges pending against him. *See State v. Kovack,* 91 *N.J.* 476 (1982); *State v. Gibson,* 68 *N.J.* 499, 512 (1975).

Defendant's contention that he was not advised as to the existence of the bar under *N.J.S.A.* 2C:1–11 does not support his claim that *N.J.S.A.* 2C:1–11 should have been made available to him at the time he pleaded guilty to the state charges or later, when he was sentenced. As noted, when the plea was entered defendant had no right to be relieved from the prosecution of the pending state bank robbery. The Code was not then in effect and *N.J.S.A.* 2C:1–11 was clearly not available to him. The situation confronting defendant was not different when he was sentenced. The sentence was based upon the plea bargain that had been reached earlier in light of the circumstances then obtaining. There was no showing of unfairness as to suggest any injustice in the failure to apply the statutory bar. Under those circumstances, *N.J.S.A.* 2C:1–11 had no pertinency to the guilty plea and resultant sentence. Consequently, we find this point, as well as the derivative argument that his counsel was "ineffective" in not informing him or the court of *N.J.S.A.* 2C:1–11, to be without merit.

Defendant's further assertion that he did not fully understand the sentencing consequences of his plea raises an issue quite

different and separate from that presented in this appeal, namely, the applicability of *N.J.S.A.* 2C:1–11 as a bar to prosecution. Nevertheless, the trial court believed, incorrectly we submit, that this claim was "critical" to the issue of the just application of *N.J.S.A.* 2C:1–11. In determining the applicability of the statutory jeopardy bar, the court apparently equated the "fairness" and "reasonable expectations" precepts articulated in *Currie,* with the "reasonable expectations" standard that governs the validity and enforceability of a plea bargain. *State v. Kovack; State v. Taylor,* 80 *N.J.* 353 (1979).[4] They are not the same. The possible misinformation given during the plea bargain concerning sentencing consequences relates only to the validity and enforceability of the plea bargain. *E.g., Kovack; Taylor.* It does not bear upon whether *N.J.S.A.* 2C:1–11 is justly applicable to bar defendant's prosecution on the charges underlying the plea.[5]

---

[4]It is not clear from this record that defendant actually raised on appeal the question of the validity of his guilty plea on grounds that he was misinformed as to its material sentencing consequences. That contention necessarily assumes that if the plea is determined to be invalid on this ground, it will be set aside and defendant will be required either to plead anew or stand trial on the underlying charges. *State v. Kovack,* 91 *N.J.* 476 (1982). However, defendant does not seek to set aside his guilty plea in order to replead or stand trial on the underlying charge or on the dismissed charges involved in the plea bargain. We therefore find no substance to this claim as it bears on the relevance of *N.J.S.A.* 2C:1–11.

[5]In the course of the limited remand hearing the trial court raised the issue as to defendant's "reasonable expectations" concerning plea consequences, and called, as a court's witness, defendant's counsel at the time of his plea and sentence. The court questioned this witness concerning defendant's understanding of the sentencing consequences. However, defendant was not present when this testimony was presented. Furthermore, defendant asserts that the court did not give him an opportunity to cross-examine this witness or to present his own testimony, constituting a denial of due process in the hearing below. Nevertheless, this issue is not relevant to whether *N.J.S.A.* 2C:1–11 is "justly applicable" to bar defendant's prosecution of the underlying charges. We need not therefore adjudicate defendant's due process claim. Nor do we pass upon defendant's additional assertion that the alleged failure adequately to inform him of the material consequences of his guilty plea

Moreover, we reject defendant's additional argument that the sentence imposed was manifestly excessive. Defendant has not demonstrated that the sentence he received was so excessive as to constitute an abuse of discretion. *State v. Whitaker*, 79 *N.J.* 503 (1979).

We conclude therefore that the procedural provision embodied in *N.J.S.A.* 2C:1–11 should not apply in this case under the terms of *N.J.S.A.* 2C:1–1c(1) of the Code of Criminal Justice. Accordingly, the judgment below is affirmed.

SCHREIBER, J., concurring.

The defendant contends that he cannot be sentenced for crimes of which he has been convicted because procedural changes in the New Jersey Code of Criminal Justice apply retroactively to cases pending on September 1, 1979. *N.J.S.A.* 2C:1–1(c). This contention assumes that the applicable modification in the New Jersey Code is procedural—a contention with which the majority agrees. Analysis of the modification and its application to this case demonstrates that the change in the Code is substantive, not procedural.

The Code altered the established rule that a conviction or acquittal of a federal offense did not bar prosecution for a state offense though the proscribed conduct arose out of the same episode. *See Bartkus v. Illinois*, 359 *U.S.* 121, 79 *S.Ct.* 676, 3 *L.Ed.*2d 684 (1959); *State v. Cooper*, 54 *N.J.* 330 (1969), cert. denied, 396 *U.S.* 1021, 90 *S.Ct.* 593, 24 *L.Ed.*2d 514 (1970). While the double jeopardy provisions in the federal and state constitutions did not preclude such dual prosecution, the Legislature could and did change that rule of law. Thus, the Code of Criminal Justice provides that as of its effective date, with few exceptions, a state prosecution is barred by a former prosecution in the United States District Court based on the same conduct. *N.J.S.A.* 2C:1–11. This amendment changed and modified the

would be reviewable in a collateral proceeding for post conviction relief under *R.* 3:22–1.

substantive law of this State. It is not a "procedural provision[ ] of the Code," *N.J.S.A.* 2C:1–1(c)(1), which involves the conduct or mode of proceeding of the trial. *See State v. Molnar,* 81 *N.J.* 475, 488 (1980) (stating that in the context of the Code, "procedure" refers to the conduct of the trial for an offense).

It is noteworthy that the United States Supreme Court in *Robinson v. Neil,* 409 *U.S.* 505, 93 *S.Ct.* 876, 35 *L.Ed.*2d 29 (1973), commented upon the substantive nature of the double jeopardy prohibition. The Court stated that the "practical result [of the constitutional guarantee] is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial." 409 *U.S.* at 509, 93 *S.Ct.* at 878, 35 *L.Ed.*2d at 33. The statutory bar to dual prosecutions embodied in *N.J.S.A.* 2C:1–11 has an effect akin to that of the constitutional double jeopardy prohibition.

Not only does *N.J.S.A.* 2C:1–11 change the rule permitting state and federal prosecutions, but also its application in the instant matter would affect another area of substantive criminal law—sentencing. The defendant here had pleaded guilty in the state court in June 1979. All that remained was sentencing. The imposition of a sentence itself is an integral part of substantive criminal law. *State v. Mandara,* 183 *N.J.Super.* 299, 303 (App.Div.1982).

The contention that *N.J.S.A.* 2C:1–11, proscribing a state criminal prosecution after a federal trial, is procedural does not square with the functional reality that the defendant is serving a seven-to-ten-year period in the New Jersey State Prison.

The majority does not apply the Code to this case for other reasons, and I therefore concur in the result.

SCHREIBER, J., concurring in the result.

*For affirmance*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—7.

*For reversal*—None.