IN THE MATTER OF ALBERT H. ARNDT, DEFENDANT-APPELLANT.

Argued May 12, 1975—Decided June 24, 1975.

*Mr. Burton Peskin* argued the cause for defendant-appellant (*Messrs Jamison, Walsh, McCardell, Moore & Peskin,* attorneys; *Mr. Lawrence A. Rudnick* on the brief).

*Mr. William J. Slohler,* Deputy Attorney General, argued the cause for plaintiff-respondent (*Mr. William F. Hyland,* Attorney General, attorney; *Mr. Richard M. Conley,* of counsel).

CONFORD, P. J. A. D., Temporarily Assigned. We granted certification 67 *N. J.* 98 (1975), to review a judgment of the Appellate Division affirming a six-months suspension of appellant's driving license by the Director of the Division of Motor Vehicles because of appellant's refusal to submit to a breath chemical test after having been arrested on suspicion of driving while under the influence of intoxicating liquors. See *N. J. S. A.* 39:4–50.4; *State v. Pandoli,* 109 *N. J. Super.* 1, 4 (App. Div. 1970).

Our grant of certification in this case was not based upon any question concerning the substantive correctness of the Director's action in the light of the circumstances attending appellant's arrest and his refusal to submit to the test, but upon the grossly inordinate delay in instituting the suspension proceedings after notification to the Director of appellant's default and in adjudicating the suspension after the hearing.

Defendant was arrested August 22, 1971; the arresting police officer notified the Director of the refusal to take the test September 2, 1971; the notice of proposed suspension was sent to the appellant by the Director April 27, 1973, almost 20 months later; the hearing by the hearing officer was conducted May 25, 1973; appellant filed exceptions on June 18, 1973 to a recommendation by the hearing officer for a suspension dated June 14, 1973; and the Director decided the matter against appellant on April 3, 1974. The order of suspension was served April 18, 1974. Thus two years and eight months passed between arrest and license

suspension, punctuated by periods of administrative inaction by the State agency of approximately 20 months and 10 months.

Some time between the arrest and the hearing appellant was acquitted of a charge of drunken driving in the Hightstown Municipal Court.

■ We consider initially appellant's contention that the suspension proceedings were defective in that the State has not established that there was present in the police barracks at the time of his refusal to take the breath test a qualified operator to administer the test. At the hearing, the arresting officer was not able to remember the name of the operator who was present, but he testified that it is standard practice for one officer to be available at all times to administer such a test. Assuming affirmative proof by the State of the availability of such an officer is a predicate of liability to suspension, a point we need not here decide, the evidence adduced warrants a finding that the officer was present. *Evid. R.* 49. But the incident is one of several imperfections in the arresting officer's recollection of what transpired at the barracks, including appellant's condition, underscoring the undesirability of so long a period of time between arrest and hearing as occurred here.

■ We address the matter of the administrative delays in prosecution of these proceedings. *N. J. S. A.* 39:4–50.4 provides that the arresting officer shall deliver to the Director his sworn report of the driver's refusal to submit to the test and that "[u]pon receipt of such a report", if the Director finds the report to be in order, "he shall * * * suspend the person's license * * * unless such person, within 10 days of the date of such notice * * *" requests a hearing (emphasis added). It is clear from this language that the Legislature contemplated that the Director should move promptly to process the violation after notification by the police. This direction is apparently designed primarily to serve the statutory policy of protecting the traveling public by removing the offending driver from the highways with reasonable dis-

patch. See *Atkinson v. Parsekian,* 37 *N. J.* 143, 155 (1962);
*David v. Strelecki,* 51 *N. J.* 563, 566 (1968).

█ █  Nevertheless, license-revocation proceedings do realistically affect drivers in a serious way, often threatening their ability to earn a livelihood, and it is settled they must meet those incidents of fairness underlying due process. *Bell v. Burson,* 402 *U. S.* 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971); *David v. Strelecki, supra* (51 *N. J.* at 566). We have, moreover, not hesitated (as a matter of judicial policy) to impose principles of fundamental procedural fairness on administrative agencies and trial tribunals beyond constitutional demands. See *Monks v. N. J. State Parole Board,* 58 *N. J.* 238 (1971) and *Rodriguez v. Rosenblatt et al.,* 58 *N. J.* 281, 294 (1971) and cases cited in the latter opinion. In this regard, the language noted above from *N. J. S. A.* 39:4-50.4 would appear to suggest a complementary policy entitling an arrested motorist to have inchoate suspension proceedings pursued against him by the Division of Motor Vehicles within a reasonable time after notification of refusal of a breath refusal test. Judicial compulsion of agency adherence to that policy would subserve not only the right of the charged individual to be free of unconscionable, harassing delay in a matter so bound up with a citizen's well being as the integrity of his driving license, but also the public interest in prompt removal of unfit drivers from the highways, *Cf. In re Emberton,* 109 *N. J. Super.* 211 (App. Div. 1970), holding that the delay of a decision on a driving license revocation for two years after a hearing did not constitute the denial of a speedy trial in the constitutional sense applicable to criminal prosecutions.

Taken together, the delays between filing of the arresting officer's report and activation of the suspension proceedings and between the hearing thereon and decision in this case warrant the language of reproval used by the United States Supreme Court in *Smith v. Ill. Bell Tel. Co.,* 270 *U. S.* 587, 591, 46 S. Ct. 408, 409, 70 L. Ed. 747 (1926). The Court

said that the agency's delay there "evince[d] an entire lack of that acute appreciation of justice which should characterize a tribunal charged with [such a] delicate and important duty * * *".

The only excuse offered by the Division for these delays was the change in gubernatorial administration in January 1974. But this obviously does not explain the 20-month delay in activating the suspension proceedings well before that time and is an unsatisfactory reason for the later delay in deciding the matter.

We conclude that the Division failed to institute the suspension proceedings within a reasonable time and that the proceedings as a whole were conducted with seriously unfair disregard of appellant's rights in the respects noted. The order of suspension should be vacated.

Judgment reversed.

CLIFFORD, J. (dissenting). The Court has determined that notwithstanding the substantive correctness of the Director's decision, the statutorily authorized sanction of license suspension for refusal to submit to a breath chemical test may not here be imposed because of unreasonable delays in activating the suspension proceedings and in deciding the case. What this boils down to is that the appellant has "beaten the system" because of what may generously be characterized as a deplorable administrative snafu. This, says the majority, nullifies an otherwise unimpeachable result.

The Director does not seek to excuse the delays; indeed, he readily confesses they are inexcusable. In explaining them the Deputy Attorney General indicated at oral argument that the initial 20-month delay was traceable to an errant employee who was supposed to process the suspension materials but instead indulged in an unfortunate habit of tossing the papers into a desk drawer and forgetting about them. This startling aberration was belatedly uncovered. The

second 10-month period was attributed to a change in administration. We have the Director's assurance that appropriate remedial steps have been taken to insure against any repetition.

The Court does not focus on any real prejudice to appellant. Rather, it rests on a right to be "free of unconscionable, harassing delay in a matter so bound up with a citizen's well being as the integrity of his driving license." That misses the mark — at least under the circumstances here. When he was taken to the State Police barracks, smelling strongly of alcohol, after being apprehended on account of his erratic driving which included weaving across the center line and mounting a curb, appellant was warned of the possible loss of driving privileges were he to refuse the breath test. He refused. From that point on I have not the slightest doubt that he knew he was continuing to drive on borrowed time and that he would eventually have to face suspension proceedings — that some day the authorities would "wake up" and his driving license would likely be suspended.

They did. It was. That result is eminently correct. I would affirm.

PASHMAN, J. authorizes me to express his concurrence in this dissenting opinion.

*For reversal*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN and SCHREIBER and Judge CONFORD—5.

*For affirmance*—Justices PASHMAN and CLIFFORD—2.