704 A.2d 1029

JOSHUA BOYD, APPELLANT, v. DIVISION OF
MOTOR VEHICLES, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 8, 1997—Decided January 21, 1998.

Before Judges SKILLMAN and LESEMANN.

*Steven H. Gifis* argued the cause for appellant (*Jeffrey L. Weinstein,* on the brief).

*Scott E. Rekant,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Mr. Rekant,* on the brief).

The opinion of the court was delivered by

LESEMANN, J.S.C. (temporarily assigned).

Joshua Boyd appeals from a July 8, 1996 order of the Division of Motor Vehicles (the Division) which suspended his New Jersey driver's license for six months because of a New York conviction and license suspension for driving while intoxicated in that state. The New Jersey suspension was imposed pursuant to the Interstate Driver License Compact (the Compact), *N.J.S.A.* 39:5D–1. Boyd acknowledges that such a reciprocal suspension is normally mandatory under the Compact, but claims that a thirteen month delay between the New York and the New Jersey actions has resulted in the New Jersey suspension running consecutively to, rather than concurrently with, the New York suspension. He asks that the New Jersey suspension be deemed to run concurrently with the New York term or, alternatively, that the New Jersey suspension be vacated.

Because we are satisfied that the Division's actions are consistent with the Compact and violated none of Boyd's rights, we affirm the order under review.

The facts are not complicated. On June 6, 1995, Boyd, who was then eighteen years old and a resident of New Jersey (with a New Jersey driver's license), pleaded guilty in Canton, New York, to having driven while intoxicated on December 8, 1993. As a result, his New York driving privileges were revoked for one year. His New Jersey license was not taken from him at that time (he had no New York license) although he and his father maintain that, because his car had been demolished in the 1993 incident, and also as a disciplinary measure, he did no further driving in New Jersey or anywhere else until his New York suspension ended on June 6, 1996. During that time he did, however, renew his New Jersey driver's license, although he maintains that he did so only for identification purposes.

On March 28, 1996, Boyd received a notice from the Division that, because of the New York conviction, and pursuant to the provisions of the Compact, it intended to suspend his New Jersey driver's license. The Compact provides that if a driver is convicted of certain offenses (including driving while intoxicated) in some state other than his home state, then the licensing authority in the home state shall apply to that driver "the penalties of the home state", *i.e.*, the penalty which would have been imposed by the home state had the offense been committed there. In this case, the "home state" being New Jersey, the penalty to be applied here was a six month suspension.[1]

The New York conviction had been posted to Boyd's New Jersey driver's record only the day before the Division advised him of its intention to suspend, and the Division maintains that it had received notice of the conviction from the New York authorities only a short time before—probably within the preceding two

---

[1] The New Jersey statute dealing with driving while intoxicated, *N.J.S.A.* 39:4–50(a)(1), provides for a suspension of between six months and one year for a first offense. However, the Director has provided by regulation that for an out of state conviction of a New Jersey resident the suspension period for a first offense shall be the minimum term of six months. *N.J.A.C.* 13:19–11.1(b).

weeks.[2] Upon receipt of the Division's notice, Boyd requested a hearing. A conference was held on July 8, 1996, and on that date the Division issued an order suspending Boyd's New Jersey driving license for 180 days, beginning on July 8, 1996.[3]

Boyd's argument rests on the inordinate delay between the start of his New York suspension (June 6, 1995) and his receipt of New Jersey's notice of intention to suspend some nine and one-half months later, on March 27, 1996. He argues that if he had received the New Jersey notice promptly after the New York suspension was imposed, the two suspensions could have been served concurrently. Thus, he says, the effect of the delay is to add a substantial period to his total suspension.

The claim that faster action by New Jersey following the New York suspension would have given Boyd the benefit of concurrent suspensions by the two states is probably correct, and the nine and one-half month delay is certainly unfortunate. But Boyd provides no satisfactory response to the answer submitted by the Division: that the delay was not attributable to it; that New Jersey acted promptly when it received notice of the New York suspension; and that it cannot control the actions of, or delays by, its New York counterparts. It argues that the Compact does not establish time limits for reciprocal acts of suspension and that acceptance of Boyd's position would undercut the strong state policy embodied in the Compact. We agree. While it would certainly be desirable to take whatever action can be taken to minimize such delays in the future, we do not believe it is reasonable, or even permissible, for us to visit the sins of another state (if there were sins) on the New Jersey Division of Motor Vehicles and thus frustrate the legislative policy embodied in the Interstate Compact.

---

[2] Boyd's attorney says he suspects that the Division actually received notice of the New York suspension long before the time when the Division acknowledges such receipt. However, the record contains no support for that contention.

[3] The suspension order was stayed pending resolution of this appeal.

This case, of course, does not involve a fact pattern such as that in *In re Arndt*, 67 *N.J.* 432, 341 *A.*2d 596 (1975) where the Court vacated an order of suspension because the New Jersey agency was guilty of an unreasonable delay. Here, the record indicates no delay at all by the New Jersey agency.

In addition, the Division submits a number of valid arguments that undercut Boyd's claim of hardship.

First, as noted, the New York suspension involved only Boyd's driving privileges within that state. He remained free to drive within his home state of New Jersey or any of the forty-eight other states. Any restriction on his driving outside New York was entirely voluntary on his part or the part of his father. And, of course, any claim of such voluntary abstention is simply unverifiable.

Second, had Boyd not protracted the New Jersey proceedings once he received the Division's notice of intention to suspend, almost half his New Jersey suspension time would in fact have run concurrently with the New York suspension. Boyd received that notice on March 28, 1996. At that time, almost two and one-half months remained on his New York suspension period, which was not to expire until June 6, 1996. Had he immediately accepted the proposed New Jersey suspension, those two and one-half months would have been served at the same time he was serving his New York suspension and the "consecutive" portion of the New Jersey suspension would have been only a bit more than three and one-half months, rather than the six months of which he complains.

And third, the Division notes that Boyd is not the first person to be faced with this problem. Others have faced it in the past and resolved it in a relatively simple manner that was available to Boyd: when the out of state suspension was imposed, they simply notified the Division of that suspension, provided a copy of the order of suspension, and mailed their New Jersey license to the Division. In that way their New Jersey suspension commenced almost simultaneously with the out-of-state suspension and ran essentially concurrently with it.

We also note two further arguments made by Boyd which we do not find persuasive.

■ As a result of his New York arrest in 1993, Boyd enrolled in a New Jersey state operated program conducted by the Intoxicated Driver Resource Center (IDRC) and completed that program on June 25, 1995. He contends that his enrollment constituted notice to the Division of his New York conviction, regardless of whether formal notice thereof had been transmitted from New York to New Jersey. The Division replies that the IDRC program is a remedial, treatment program which has no connection with, and does not report to, any enforcement official.[4] And it also notes that Boyd actually enrolled in the IDRC program before his New York conviction (although after the offense had been committed) and thus, even if his participation had been brought to the attention of enforcement officials, there would have been no basis for them to take any action against Boyd. We agree with the Division's position: Boyd's participation in the IDRC program is an irrelevancy and did not provide notice to the Division of his New York conviction and license suspension.

Finally, Boyd maintains that he is now a resident of Colorado and if New Jersey goes through with its proposed suspension of his license, Colorado as his present "home state" will probably do the same and the unfair penalties imposed upon him will be magnified. The State denies the premise of the argument—that Colorado will probably impose a reciprocal suspension—but even assuming that Boyd's contention is correct, the argument clearly is one that should be addressed to Colorado authorities and not to this court.

Affirmed.

---

[4] The Division adds that, in order to encourage IDRC participation by anyone who has an alcohol problem, the separation between the remedial and enforcement programs is a matter of deliberate policy.