829 A.2d 284 (2003)
362 N.J. Super. 519
STATE of New Jersey, Plaintiff-Appellant,
v.
Daniel GRUBER, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 2003.
Decided July 8, 2003.
*286 Charles Ouslander, Deputy Attorney General, argued the cause for appellant (Peter C. Harvey, Acting Attorney General, attorney; Mr. Ouslander, of counsel and on the brief).
Nathan Z. Dershowitz,(Dershowitz, Eiger & Adelson) of the New York bar, admitted pro hac vice, New York City, argued the cause for respondent (Flood & Basile, attorneys, Hackensack; Daniela Klare Elliott, of counsel; Raymond F. Flood and Mr. Dershowitz, on the brief).
Before Judges A.A. RODRIGUEZ, WELLS and PAYNE.
*285 The opinion of this court was delivered by PAYNE, J.A.D.
The State appeals from the trial court's dismissal pursuant to N.J.S.A. 2C:1-3f of an indictment charging defendant Daniel Gruber with second-degree child endangerment (distribution of child pornography), N.J.S.A. 2C:24-4b(5)(a), and fourthdegree child endangerment (possession of child pornography), N.J.S.A. 2C:24-4b(5)(b). The court premised the dismissal on the ground that Gruber was prosecuted for the same conduct in New York and on its determination that New Jersey's penal interests were adequately served by the New York prosecution. We reverse.
The following facts, which we take from the trial court's written opinion dismissing the indictment, were not disputed for the purposes of Gruber's motion to dismiss.
On February 27, 2001, the defendant, Daniel Gruber, age 23, a student at New York University was using a computer and through his America Online (AOL) account he entered a chatroom called "WestchesterNYM4M." At 4:09 p.m. the defendant instant messaged a person who identified himself as a 14-yearold boy. The person the defendant encountered over the Internet was not a 14-year-old boy but was instead Investigator Pascal Storino from the Westchester County District Attorney's Office posing as a 14-year-old boy.
The AOL conversations or "chats" between the parties began on February 27, 2001, and continued intermittently until April 30, 2001. During the course of these conversations there were six instances when the defendant either engaged in sexual conversations or forwarded sexually explicit images of young males to the apparent youth. During these conversations the defendant let it *287 be known that his primary residence was located in Englewood, New Jersey.
On two separate occasions the undercover officer attempted to solicit a meeting between the parties. On both occasions the defendant did not go to the proposed meeting. When the attempts to meet were unsuccessful, Storino contacted the New Jersey State Police to secure a search warrant for the defendant's Englewood residence from the New Jersey State Police.
On May 7, 2001, members of the New Jersey State Police and Storino went to the defendant's residence in Englewood, New Jersey and searched the property pursuant to a valid warrant. The result of this search was the seizure of the defendant's personal laptop. At the time of the seizure the laptop was still hot and secured while in the standby mode. When the laptop was confiscated, it had a sexually explicit photo displayed on the monitor.
Gruber allegedly conducted several of his conversations with Storino from his parents' home in New Jersey, including conversations held on March 12, 2001, April 18, 2001 and April 30, 2001. It appears that an additional conversation and transmission of pornographic material from New Jersey occurred on April 14. However, the location of the transmission is not identified in Storino's affidavit or his testimony before a state grand jury in New Jersey. During each chat with Storino, Gruber sent to Storino through the Internet photographs of naked, under-age boys engaged in sexual acts including anal intercourse and masturbation. In all, six files containing thirty images were transmitted from New Jersey. None of the transmissions appears to have originated from New York, and Gruber has stated that he maintained no child pornography in his New York computer.
Upon seizure and examination by the New Jersey State Police, the computer that Gruber kept in New Jersey was found to contain over six hundred pornographic pictures depicting juvenile males. Most showed boys between eight and nine years of age, but some depicted children as young as three to five years old. Gruber admitted possession and transmission of the images in a confession given shortly after his New Jersey computer was seized.
Gruber was prosecuted in New York on a six-count felony complaint charging one count of attempted dissemination of indecent material to minors in the first degree in violation of N.Y. Penal Law § 110.00 and § 235.22 and five counts of promoting an obscene sexual performance by a child, contrary to N.Y. Penal Law § 263.10. The New York complaint was based upon Gruber's online communications with Storino, including the March 12, April 14, April 18, and April 30, 2001 communications just described.
On September 19, 2001, Gruber pled guilty to one count of violating N.Y. Penal Law § 263.10 (promoting an obscene sexual performance by a child), based upon his March 12, 2001, transmission of child pornography to Storino. The prosecutor recommended a sentence of five years' probation along with sex offender registration. At the plea hearing, defense counsel indicated to the New York court that there was a corresponding investigation in New Jersey, arising from the same conduct, as to which he "anticipate[d] a guilty plea" before December 5, 2001.
On December 20, 2001, the New York court sentenced Gruber to the five-year probationary period recommended by the prosecutor, and required that Gruber register as a sex offender, undergo counseling, and complete an approved sex offender treatment program. The court *288 dismissed all remaining counts of the complaint against him.
Parallel proceedings occurred in New Jersey. On May 7, 2001, the day the search warrant was executed, the New Jersey State Police filed a one-count complaint against Gruber, charging him with fourth-degree endangering the welfare of a child as the result of his possession of child pornography. On December 19, 2001, three days before Gruber was sentenced in New York, Gruber was indicted in New Jersey on one count of second degree endangering the welfare of a child (distribution of child pornography) and one count of fourth degree endangering the welfare of a child (possession of child pornography).
Following his indictment, Gruber sought its dismissal under N.J.S.A. 2C:1-3f, arguing that his previous criminal prosecution in New York arose out of the same conduct and satisfied New Jersey's penal interests. The State opposed that motion, arguing that New Jersey's interests were unsatisfied because (1) the New York conviction was based on only one transmission of child pornography, whereas New Jersey had indicted Gruber on six transmissions, involving thirty different images; (2) the crime to which Gruber pled guilty in New York was not the same as the crimes charged in New Jersey, because the New York crime did not address transmission of child pornography by means of a computer, which the State contended was a more ubiquitous medium of transmission, therefore rendering the crime a more serious offense; and (3) Gruber faced a presumption of incarceration in New Jersey for the crime of second-degree endangering the welfare of a child, but he received only a probationary sentence in New York.
Following oral argument, the court dismissed the New Jersey indictment, finding that the New York prosecution was based on "identical" proofs and served New Jersey's penal interests. In considering the interests of the two states, the court first observed that "[t]his was a New York investigation in which New Jersey's participation was peripheral." The court then compared the sentences Gruber faced in New York and New Jersey. The court found that, for violating N.Y. Penal Law § 263.10, Gruber faced the possibility of receiving up to seven years in prison. Although Gruber was in fact sentenced to only five years' probation, the court noted the many conditions attached to the sentence, including an obligation to register as a sex offender and the requirement of psychological counseling and treatment. The court recognized that, under New Jersey law, Gruber faced a prison term of five to ten years for second-degree child endangerment, with a presumption of incarceration, and a term of zero to eighteen months for fourth-degree child endangerment. The court noted, however, that "[a]s a practical matter many counts charging second-degree are rescinded by a plea to a third-degree charge along with probation."
Ultimately, on the issue of comparative sentencing, the court concluded that
the difference in potential sentence is not so disparate that New Jersey's interests in this matter would not be served. The defendant is subject to Megan's Law as a condition of probation and if the defendant violates probation, he could be sentenced for up to seven years. The probation sentence subject to Megan's Law given in the New York plea does not trivialize the defendant's exposure to incarceration.
As a final matter, the trial court found that Gruber had not engaged in forum shopping in order to receive a more favorable result in New York, because (1) although both States filed complaints against Gruber on May 7, 2001, the New York *289 prosecution preceded the New Jersey prosecution; (2) the May 7, 2001, complaint in New Jersey alleged only a fourthdegree offense; and (3) New Jersey did not take action by filing the indictment until shortly before Gruber was sentenced in New York, and, until then, Gruber had no knowledge that New Jersey was going to charge a second-degree offense. On the other hand, the court found forum shopping on the part of the State, since it had sought to prosecute Gruber only when it discovered New York's amenability to a probationary term for the offenses charged.
The State filed a timely appeal from the court's determination. On appeal, it contends first that the trial court erred in dismissing the indictment because there is no identity between the charges in the two jurisdictions. The elements of the New York crime of promoting an obscene sexual performance by a child are not identical to the New Jersey crime of second-degree child endangerment, and the crime of possession of child pornography, charged in New Jersey, was not charged in New York at all. Additionally, the State argues that Gruber's plea to a single count in New York leaves the preponderance of the New Jersey charges unaddressed. The State argues further that the penal interests of New Jersey are not adequately served by the New York prosecution because of the restricted factual basis for the plea and the disparity between the probationary sentence imposed in New York and Gruber's likely sentence in New Jersey. Finally, the State disputes the court's conclusion that New Jersey has little interest in the case, noting Gruber's residence in the state, that electronic transmissions of pornographic material had emanated from New Jersey on multiple occasions and that the possessory offense solely related to New Jersey.
In this appeal, the trial court's interpretation of N.J.S.A. 2C:1-3f is subject to de novo review. Manalapan Realty v. Township Comm. of the Tp. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995); Wyzykowski v. Rizas, 132 N.J. 509, 518, 626 A.2d 406 (1993); Atlantic Container, Inc. v. Tp. of Eagleswood Planning Bd., 321 N.J.Super. 261, 269, 728 A.2d 849 (App.Div.1999). We review the court's dismissal of Gruber's indictment under an abuse of discretion standard. State v. Ellis, 280 N.J.Super. 533, 552, 656 A.2d 25 (App.Div.1995). We address the parties' arguments in light of these standards.

I.
N.J.S.A. 2C:1-3f provides:
Notwithstanding that territorial jurisdiction may be found under this section, the court may dismiss, hold in abeyance for up to 6 months, or, with the permission of the defendant, place on the inactive list a criminal prosecution under the law of this State where it appears that such action is in the interests of justice because the defendant is being prosecuted for an offense based on the same conduct in another jurisdiction and this State's interest will be adequately served by a prosecution in the other jurisdiction.
Thus, for dismissal of an indictment to be sanctioned under this statute, the court must determine both that: (1) the defendant is being prosecuted for an offense based on the same conduct in another jurisdiction; and (2) this State's interest will be adequately served by that prosecution.
N.J.S.A. 2C:1-3f represents a curtailment of the dual sovereignty doctrine. Under that doctrine, when a defendant's single act violates the peace and dignity of two sovereigns, by breaking the laws of *290 each, the defendant is treated as having committed two distinct offenses. Therefore, there is no constitutional, double jeopardy bar to two separate prosecutions for the same conduct in two separate jurisdictions. Ellis, supra, 280 N.J.Super. at 549-50, 656 A.2d 25; State v. Buhl, 269 N.J.Super. 344, 366-67, 635 A.2d 562 (App. Div.), certif. denied, 135 N.J. 468, 640 A.2d 850 (1994).
The intent of N.J.S.A. 2C:1-3f is to protect criminal defendants against the potential unfairness of such multiple prosecutions. Cannel, New Jersey Criminal Code Annotated, ("Cannel"), comment 2 on N.J.S.A. 2C:1-3 (2002) (quoting comment one from 1971 commentary). Accord, Ellis, supra, 280 N.J.Super. at 549, 656 A.2d 25 (citing Final Report of the New Jersey Criminal Law Review Comm'n, Vol. II: Commentary, § 2C:1-3, at 5 (October 1971)).
In our opinion, the Code would somewhat broaden New Jersey's criminal jurisdiction. In view of the continued and increasing importance of criminal conduct which is interstate in nature and given the protection to the defendant from the provisions of § 2C:1-10 of the Code [establishing when a prosecution is barred by a former prosecution for a different offense] this seems desirable. We have, however, added in subsection f a unique provision granting discretion to the court to dismiss or take some lesser action under a standard similar to that used in the civil doctrine of forum non conveniens. This should adequately protect against multiple prosecutions while, at the same time, granting a broad power to the state to prosecute where appropriate.

[Ibid.]
N.J.S.A. 2C:1-3f may also be viewed as promoting efficiency, uniformity, and consistency in the administration of the criminal justice system. The Supreme Court held that this was the Legislature's intent in passing a related statute, N.J.S.A. 2C:1-11, which limits the State's right to prosecute where there has been a previous prosecution by the federal government. State v. Goodman, 92 N.J. 43, 51-53, 455 A.2d 475 (1983).
At the same time, however, the doctrine of dual sovereignty remains firmly established in this jurisdiction. Buhl, supra, 269 N.J.Super. at 367, 635 A.2d 562. In addition, we recognize that N.J.S.A. 2C:1-3f "grant[s] a broad power to the state to prosecute where appropriate." Cannel, supra, comment 2 on N.J.S.A. 2C:1-3 (2002) (quoting comment one from 1971 commentary). As we observed when commenting on parallel state and federal prosecutions:
In light of "ideological differences between the federal government and some of the states in determining the gravity of various criminal offenses[,][a] prohibition against a second trial ... could well eventuate in a frustration of either the national or state policy and law enforcement."
[Buhl, supra, 269 N.J.Super. at 367, 635 A.2d 562 (quoting State v. Cooper, 54 N.J. 330, 337-38, 255 A.2d 232 (1969)), cert. denied, 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed.2d 514 (1970).]
Only one published decision in a kidnapping matter interprets N.J.S.A. 2C:1-3f. See Ellis, supra, 280 N.J.Super. at 549-52, 656 A.2d 25. Ellis abducted his victim in New York, and, over the course of a fourday kidnapping, transported her through New York, New Jersey and Connecticut. In a New York prosecution, Ellis pled guilty to kidnapping in the second degree and was sentenced to an indeterminate term of two to six years. In an additional prosecution in New Jersey, he was convicted *291 of kidnapping in the first degree, N.J.S.A. 2C:13-1b, aggravated sexual assault, N.J.S.A. 2C:14-2a, aggravated assault, N.J.S.A. 2C:12-1b(4), terroristic threats, N.J.S.A. 2C:12-3a, and possession of a shotgun for an unlawful purpose, N.J.S.A. 2C:39-4a. Ellis was sentenced in New Jersey to a controlling custodial term for the kidnapping of twenty years with a seven-year parole disqualifier.
On appeal, Ellis claimed that the trial judge, who had initially dismissed the New Jersey kidnapping charge pursuant to N.J.S.A. 2C:1-3f, had erred in reinstating it because the same conduct underlay both states' kidnapping prosecutions and because New Jersey's penal interests had been served by the New York conviction. We rejected Ellis' argument, concluding that the New York and New Jersey prosecutions were not based on the "same conduct." We found that the New Jersey kidnapping conviction was based upon Ellis' unlawful confinement of the victim in New Jersey, with the intent to commit aggravated sexual assault or aggravated assault upon her. The New York kidnapping conviction, on the other hand, was based upon Ellis' initial abduction of the victim in New York. Ellis, supra, 280 N.J.Super. at 551-52, 656 A.2d 25. We concluded: "The New York offense was subject to proof without reference to the New Jersey conduct. Thus, New Jersey's interests were not vindicated by the New York conviction." Id. at 552, 656 A.2d 25. Additionally we noted that the statues applicable to the two crimes differed, and the differing degrees of seriousness of the two offenses were reflected in the penalties applicable to each. Id. at 551-52, 656 A.2d 25.

II.
In the present case, the State contends that the test of identity of conduct under N.J.S.A. 2C:1-3f was not met because the conduct for which Gruber was prosecuted in New York is not the "same conduct" for which he faces prosecution in New Jersey. The State argues that the court must compare the crime for which Gruber was convicted in New York with the crimes for which he is charged in New Jersey, and, for prosecution to be barred, the two must be "identical."
Gruber's first response is that, as a procedural matter, we may not consider this aspect of the State's argument, because the State did not raise this issue before the trial court. We disagree. On appeal, the State points to distinctions between the New York and New Jersey crimes that are different from those upon which it relied in argument before the trial court. However, the general tenor of the State's argument remains the same. Accordingly, we perceive no procedural bar to our consideration of this argument.
We thus address its merits. In New York, defendant pled guilty to and thus was convicted of violating N.Y. Penal Law § 263.10. That statute provides as follows:
A person is guilty of promoting[1] an obscene sexual performance by a child when, knowing the character and content thereof, he produces, direct or promotes any obscene performance which includes sexual conduct by a child less than seventeen years of age.
Gruber was not charged with possession of child pornography in New York, and *292 indeed there appears to have been no factual foundation for such a charge in that jurisdiction. He was so charged in New Jersey. N.J.S.A. 2C:24-4b(5)(b). Thus to that extent we agree that complete identity of conduct does not exist in this case, and that the trial judge erred in finding it to have been demonstrated.
Gruber opposes this result, contending that the offense of possessing child pornography was "subsumed" in the offense of distributing child pornography. However, Gruber's argument is not supported by the record, since the files upon which New Jersey's distribution charges are premised are wholly different from those that form the foundation for the possession charge.
The State argues additionally that N.Y. Penal Law § 263.10, the law under which Gruber was charged with distribution of child pornography in New York, differs from that of New Jersey, because New Jersey's statute, N.J.S.A. 2C:24-4b(5)(a), does not require the depiction to be legally obscene and because the depicted child's age limit in New York is one year higher than that in New Jersey. We find these distinctions to be irrelevant in the circumstances of this case, since the criminality of Gruber's conduct does not turn on either.[2] Contrary to the State's position, we find no basis for importing into our interpretation of N.J.S.A. 2C:1-3f decisions rendered in connection with N.J.S.A. 2C:1-11a. The latter statute has been interpreted to bar a state prosecution following a federal conviction for "identical" conduct. See, e.g., State v. DiVentura, 187 N.J.Super. 165, 172-73, 453 A.2d 1354 (App.Div.1982) (holding that acquittal in federal prosecution for mail fraud did not bar a subsequent state prosecution for arson, although both arose out of the same course of conduct), certif. denied, 93 N.J. 261, 460 A.2d 666 (1983).[3] It is reasonable that a stricter standard would be applicable to a mandatory statutory bar under N.J.S.A. 2C:1-11a than would be applicable to a discretionary determination to dismiss an indictment as duplicative under N.J.S.A. 2C:1-3f. Moreover, the language of N.J.S.A. 2C:1-3f merely requires as a precondition to dismissal prosecution "for an offense based on the same conduct." It does not demand substantially identical charges.
The State argues additionally that, in New York, defendant was convicted of only one instance of distributing child pornography, whereas, in New Jersey, defendant faces prosecution for six instances of distribution. It argues that this fact distinguishes the New York and New Jersey prosecutions, and renders them not based upon the "same conduct," so that the first prong of the test under N.J.S.A. 2C:1-3f has not been met.
Gruber, however, disputes this interpretation of N.J.S.A. 2C:1-3f, arguing that, in directing the courts to compare the "prosecutions" in two states, N.J.S.A. 2C:1-3f requires the court to look at not only the *293 crime for which defendant was convicted in New York, but also the crimes for which he was charged there. Alternatively, Gruber contends the court should compare only the underlying conduct that supports the charges in both states, without reference to the charges themselves.
We conclude that N.J.S.A. 2C:1-3f, reasonably interpreted in light of the circumstances of this case, requires a comparison both of the offenses charged in each state and their factual underpinnings. Such an interpretation permits a consideration of whether New York prosecuted Gruber for each of his separate acts of distributing child pornography from New Jersey as outlined by Storino, which New Jersey intends to do, while according deference to the determination of the prosecutor in New York to resolve the matter pending there with a plea to less than all offenses charged in the complaint.
In the present case, it appears that Gruber was charged in New York with each of the instances of distribution of child pornography from New Jersey that are the subject of the New Jersey indictment.[4] Therefore, we conclude that Gruber's prosecution for distributing child pornography, contrary to N.Y. Penal Law § 263.10, was for the "same conduct" as his prosecution for distributing child pornography, contrary to N.J.S.A. 2C:24-4(b)(5)(a). In the circumstances, only the charge of possession of such material is unique to this State.

III.
We next consider whether New York's prosecution of Gruber for distributing child pornography adequately served New Jersey's penal interests. As to this issue, the parties again differ in their interpretation of N.J.S.A. 2C:1-3f. The State contends that we must compare the actual sentence Gruber received after conviction in New York to the likely sentence he would receive in New Jersey, if convicted of the crimes charged. Gruber, on the other hand, contends that we must compare the range of sentences that he faced in New York, based upon the crimes charged, to the range of sentences he faces in connection with the crimes charged in New Jersey.
We find both positions to be relevant to our interpretation of N.J.S.A. 2C:1-3f. As we recognized in Ellis, the range of potential sentences provides evidence of the seriousness of the charges brought by the two jurisdictions. 280 N.J.Super. at 552, 656 A.2d 25. At the same time, in instances in which prosecution in the foreign jurisdiction is complete, the actual sentence imposed is relevant to our consideration of whether the State's interests were "adequately served" by the New York conviction. N.J.S.A. 2C:1-3f.
Our comparison of the range of sentences available in the two jurisdictions, together with the actual sentence imposed by the court in New York, convinces us that New Jersey's interests have not been met by New York's prosecution, and that the trial court abused its discretion when it concluded otherwise.
New York categorizes distribution of child pornography, N.Y. Penal Law § 263.10, as a class D felony, punishable by an indeterminate term of up to seven years of imprisonment. N.Y. Penal Law § 70.00(2)(d). However, no presumption of imprisonment exists. A probationary term may be imposed, depending upon the *294 circumstances. N.Y. Penal Law §§ 60.05, 65.00. As we have noted, in the present case, after accepting Gruber's plea of guilty to one count of distributing child pornography, the New York court sentenced defendant to five years' probation, with various conditions, including sex offender registration.
By contrast, New Jersey categorizes distribution of child pornography as a second degree offense. N.J.S.A. 2C:24-4b(5)(a). As such, it is punishable by a term of between five and ten years in prison, N.J.S.A. 2C:43-6a(2), with a presumptive term of seven years. N.J.S.A. 2C:44-1f(1)(c). Furthermore, in New Jersey, a presumption of imprisonment exists that will be overcome only in the rarest, extraordinary, or idiosyncratic circumstances upon a showing of "serious injustice." N.J.S.A. 2C:44-1d. Precedent demonstrates that the presumption of incarceration is extremely strong. This is so because, in sentencing, New Jersey has chosen to focus on the offense rather than the offender. State v. Evers, 175 N.J. 355, 386-401, 815 A.2d 432 (2003); State v. Jabbour, 118 N.J. 1, 6-9, 570 A.2d 391 (1990); State v. Johnson, 118 N.J. 10, 15-20, 570 A.2d 395 (1990); State v. Jarbath, 114 N.J. 394, 406-09, 413, 555 A.2d 559 (1989); State v. Roth, 95 N.J. 334, 357-59, 471 A.2d 370 (1984); State v. Corso, 355 N.J.Super. 518, 527-30, 810 A.2d 1130 (App.Div.2002), certif. denied, 175 N.J. 547, 816 A.2d 1048 (2003); State v. Cooke, 345 N.J.Super. 480, 487-90, 785 A.2d 934 (App.Div.2001), certif. denied, 171 N.J. 340, 793 A.2d 718 (2002).
In State v. Evers, a case decided after the trial judge had rendered his decision to dismiss the indictment against Gruber, the Supreme Court emphasized the presumption of imprisonment in a case comparable to the present one. There, the defendant had pled guilty to one count of distributing child pornography and forty counts of possessing child pornography. At sentencing, the trial court downgraded the seconddegree distribution offense to the thirddegree sentencing range, concluded that a sentence of imprisonment would constitute a serious injustice, and sentenced the defendant to five years' probation, conditioned on 364 days of incarceration in the Essex County jail, which the court suspended pending a six-month review of the defendant's case. The State appealed, and the Supreme Court reversed. The Court found none of the extraordinary circumstances necessary to overcome the presumption of imprisonment, notwithstanding the fact that, other than his brief foray into child pornography, the defendant appeared to be an upstanding citizen: he was a middle-aged man, with a stable, longterm marriage, an adolescent daughter, and a job in the construction industry; he was involved in school and community activities; he had no history of prior criminal conduct; and, while the prosecution was pending, he voluntarily entered into longterm psychological treatment. Evers, supra, 175 N.J. at 395-401, 815 A.2d 432. The trial court's sentencing decision was thus reversed.
Our review of relevant law, including Evers, thus discloses little overlap in the way New York and New Jersey treat individuals convicted of distributing child pornography and demonstrates that, in New Jersey, such distribution is considered to be a much more serious offense than it is in New York.
Th[e] statute treats the distribution of child pornography as severely as a robbery, burglary, and significant theft. However harsh the grading of this offense may appear, that was the intent of the Legislature.

* * *
*295 The Legislature enacted this section of the child pornography statute to halt the sexual exploitation of children by making child pornography trafficking a second-degree offense.
[Evers, supra, 175 N.J. at 399-400, 815 A.2d 432.]
It is New Jersey's right, as a sovereign co-equal to New York, to treat the crime of distributing child pornography as a more serious offense than does New York. Heath v. Alabama, 474 U.S. 82, 89, 106 S.Ct. 433, 437-38, 88 L.Ed.2d 387, 395 (1985). This ideological difference forms a legitimate basis for a prosecution of Gruber in New Jersey, in addition to New York. Under the circumstances presented by this case, New Jersey's penal interests, as declared by the Legislature, have not been served by the New York prosecution. N.J.S.A. 2C:1-3f; Buhl, supra, 269 N.J.Super. at 367, 635 A.2d 562.

IV.
We find that the trial court's error in dismissing the indictment of Gruber arose from several sources. First, the trial court downplayed New Jersey's interest in prosecuting defendant, by categorizing the matter as "a New York investigation in which New Jersey's participation was peripheral." However, in this case, New Jersey had jurisdiction to prosecute Gruber, and it had a substantial interest in doing so. Gruber, who resided in New Jersey with his family, was found to possess hundreds of photographs depicting child pornography that he was viewing and distributing by means of a laptop computer located in this State, It was irrelevant, for the purposes of N.J.S.A. 2C:1-3f, that New Jersey was informed of defendant's activities by a law enforcement officer located outside the State. Indeed, if we were to adopt the trial court's perspective on this issue, that act might have the negative effect of discouraging cooperation between law enforcement in different jurisdictions, at a time when there is a growing need for such cooperation. See, e.g., Evers, supra, 175 N.J. at 364-66, 368-85, 815 A.2d 432 (describing cooperative, interstate police investigation, which resulted in defendant's arrest for distributing and possessing child pornography).
Further, we do not regard the trial court's reliance on a perceived lack of forum shopping on Gruber's part to be a significant consideration here. N.J.S.A. 2C:1-3f anticipates a circumstance in which the foreign jurisdiction prosecutes first, but it nonetheless permits a subsequent prosecution in New Jersey. This is consistent with the United States Supreme Court's acknowledgment that, "[t]o deny a State its power to enforce its criminal laws because another State has won the race to the courthouse `would be a shocking and untoward deprivation of the historic right and obligation of the States to maintain peace and order within their confines.'" Heath, supra, 474 U.S. at 93, 106 S.Ct. at 440, 88 L.Ed.2d at 397 (quoting Bartkus v. People of State of Ill., 359 U.S. 121, 137, 79 S.Ct. 676, 685, 3 L.Ed.2d 684, 694 (1959)). In any event, when pleading guilty in New York, defendant clearly understood that he was to be prosecuted separately in New Jersey. Indeed, defense counsel informed the New York court that defendant expected to plead guilty in New Jersey as well as New York.
Finally, we find the trial court's speculation with respect to the ultimate nature of a plea agreement in New Jersey to have been factually and legally unfounded. The decision whether to offer a plea bargain is a matter of prosecutorial authority and discretion. State v. Hessen, 145 N.J. 441, 452, 678 A.2d 1082 (1996); State v. Williams, 277 N.J.Super. 40, 47-48, 648 A.2d 1148 (App.Div.1994). Thus, *296 when considering the dismissal of an indictment under N.J.S.A. 2C:1-3f, it is improper to consider the possibility of a plea bargain, absent clear evidence of the prosecutor's intent on this issue. Here, the only offer the State made was a plea of guilty to second-degree child endangerment with a recommended sentence of seven years' imprisonment. The trial court erred to the extent that it speculated as to a plea more generous than the one offered. Cf., Evers, supra, 175 N.J. at 398, 815 A.2d 432 (in imposing sentence after guilty plea, trial court erred in considering State's initial plea agreement offer, which had been rejected by the defendant). Moreover, contrary to the court's statement, a reduction in the degree of the crime for sentencing purposes would not erase the presumption of imprisonment. State v. O'Connor, 105 N.J. 399, 403-05, 522 A.2d 423 (1987).

V.
As a final matter, we address Gruber's argument that N.J.S.A. 2C:1-11 bars his prosecution.
N.J.S.A. 2C:1-11 provides in relevant part as follows:
When conduct constitutes an offense within the concurrent jurisdiction of this State and of the United States, a prosecution in the District Court of the United States is a bar to a subsequent prosecution in this State under the following circumstances: [paragraphs a. and b., enumerating circumstances, omitted.]
By its very terms, N.J.S.A. 2C:1-11 is limited to instances in which there is concurrent federal and state jurisdiction, and a prosecution in a District Court of the United States. N.J.S.A. 2C:1-11 does not address, or control, disposition of cases where, as here, there are multiple state prosecutions. Rather, the multi-state prosecution scenario is addressed under N.J.S.A. 2C:1-3f, which we have discussed previously. Although N.J.S.A. 2C:1-3f is avowedly unique, New Jersey's Legislature intentionally chose to separate the two inquiries and applied different standards to each. Ellis, supra, 280 N.J.Super. at 550, n. 6, 656 A.2d 25 (citing Cannel, New Jersey Criminal Code Annotated, comments on N.J.S.A. 2C:1-11 (1994)). See also, DiVentura, supra, 187 N.J.Super. at 169, 453 A.2d 1354 (citing draft of N.J.S.A. 2C:1-11, modeled on Model Penal Code, Tentative Draft No. 5, § 1.11(a) and (b) (1956), under which the statute would have applied to previous prosecutions in other states, as well as previous prosecutions in federal court). Thus, to consider the present case solely under the test provided under N.J.S.A. 2C:1-11 would violate the Legislature's intent in creating two separate and distinct statutory schemes. Ellis, supra, 280 N.J.Super. at 550, n. 6, 656 A.2d 25.
In Ellis, we suggested that "in the appropriate case," N.J.S.A. 2C:1-11 might be persuasive as an approach to an interstate conflict. Ibid. However, we find no such circumstances to have been presented here.
Reversed.
NOTES
[1] The term "promote" is defined as "to procure, manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, present, exhibit or advertise, or to offer or agree to do the same." N.Y. Penal Law § 263.00(5). Thus the New York statute, as in New Jersey, prohibits distribution of child pornography.
[2] Moreover, the obscenity requirement in New York codifies the constitutional prohibition against prosecuting protected speech. That limitation is applicable to New Jersey as well. Ashcroft v. Free Speech Coalition, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002); State v. Hudson Cty. News Co., 41 N.J. 247, 253-57, 196 A.2d 225 (1963). Child pornography is not protected speech, however, and nobody argues that the images at issue are not child pornography. New York v. Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).
[3] We note the Supreme Court's criticism of DiVentura as incorrectly applying the test of identity for purposes of double jeopardy set forth in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932). See State v. Dively, 92 N.J. 573, 580 n. 6, 458 A.2d 502 (1983).
[4] The charging documents in New York and New Jersey contain different language and differ in their degree of specificity. However, the distribution charges in both are premised upon the same evidence provided by Storino.