879 A.2d 747

STATE OF NEW JERSEY, DIVISION OF MOTOR VEHICLES,
PLAINTIFF–RESPONDENT, v. MICHAEL D. PEPE,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 11, 2005—Decided August 1, 2005.

Before Judges NEWMAN, R.B. COLEMAN and BILDER.

*Mark W. Phillips,* argued the cause for appellant (*Rylak and Gianos,* attorneys; *Mr. Phillips,* on the brief).

*Emily H. Armstrong,* Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey,* Attorney General, attorney; *Michael J. Haas,* Assistant Attorney General, of counsel; *Kelly J. Williams,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

R.B. COLEMAN, J.A.D.

Defendant Michael Pepe appeals from the final decision of the New Jersey Division of Motor Vehicles (NJDMV) suspending Pepe's New Jersey driver's license for his out-of-state (New York) conviction of driving while intoxicated. Pepe did not receive a concurrent suspension of his driving privileges in New Jersey. He contends he is now being prejudiced in that he has moved back to New Jersey and his job could be in jeopardy if he is unable to drive. Stated more fully, his arguments are as follows:

I. THE NEW JERSEY DIVISION OF MOTOR VEHICLES ERRED IN REFUSING TO GRANT THE DEFENDANT'S REQUEST FOR A HEARING.

II. THE PERIOD OF SUSPENSION IMPOSED BY THE DIVISION OF MOTOR VEHICLES EXCEEDS THAT WHICH IS PERMITTED BY THE NEW JERSEY ADMINISTRATIVE CODE.

III. TO PUNISH THE DEFENDANT IN NEW JERSEY FOR THE SAME OFFENSE FOR WHICH HE WAS PUNISHED IN NEW YORK VIOLATES THE DEFENDANT'S CONSTITUTIONAL RIGHTS AND SUBJECTS HIM TO DOUBLE JEOPARDY.

IV. TO SUBJECT THE DEFENDANT TO AN ADDITIONAL ADMINISTRA-TIVELY IMPOSED PERIOD OF SUSPENSION IN NEW JERSEY FOR AN OFFENSE THAT OCCURRED IN THE STATE OF NEW YORK WHERE OTHER NEW JERSEY RESIDENTS WHO COMMIT THE SAME OFFENSE IN THE STATE OF NEW JERSEY ARE NOT SUBJECTED TO AN ADDI-TIONAL ADMINISTRATIVELY IMPOSED PERIOD OF SUSPENSION, VIO-LATES THE DEFENDANT'S CONSTITUTIONAL RIGHTS TO EQUAL PRO-TECTION.

V. PRINCIPLES OF COMITY AND RES JUDICATA PREVENT FURTHER SUSPENSION OF THE DEFENDANT'S DRIVING PRIVILEGES.

VI. THE IMPOSITION OF AN ADDITIONAL PERIOD OF SUSPENSION IN THIS CASE CONSTITUTES THE IMPOSITION OF SANCTIONS BEYOND WHAT IS NEEDED TO REFORM MR. PEPE.

VII. THE NJDMV SHOULD BE PRECLUDED FROM IMPOSING ANY ADDITIONAL PERIOD OF SUSPENSION IN THIS CASE AS MR. PEPE

HAS SUFFERED SUBSTANTIAL PREJUDICE DUE TO THE DELAYS AND
INACTION OF THE NJDMV.

These arguments are without merit. We affirm the decision of
NJDMV.

On August 18, 2002, Pepe was arrested in Nassau County, New
York, and charged with driving while intoxicated with a blood
alcohol content (BAC) equal to or exceeding .10 percent, a per se
violation in New York and in New Jersey.[1] As a result of
defendant's arrest, his driving privileges in New York were auto-
matically suspended and four months later on December 20, 2002,
when he pled guilty and was sentenced, the court ordered an
additional suspension of two months. It also required that Pepe
complete a ten week educational course on alcohol and chemical
dependency, a sixteen hour course in a New York State DMV
drunk driving program, attend sixteen individual counseling ses-
sions and attend eighteen group counseling sessions. In addition,
Pepe was placed on probation for a period of three years and
required to pay fines in the amount of $1,070. His driving
privileges could not be restored until such time that he completed
his course requirements and paid the fines; however, the court
permitted him to apply for a conditional license so that he could
work and attend his courses after the completion of the additional
two month suspension.

On January 13, 2003, the State of New York sent the NJDMV
notice of Pepe's December 20, 2002, DWI conviction. On May 7,
2003, NJDMV issued a Notice of Scheduled Suspension stating its
intent to suspend Pepe's New Jersey driving privileges for one-
hundred eighty days in accordance with *N.J.S.A.* 39:5–30, *N.J.S.A.*
39:5D–4 and *N.J.A.C.* 13:19–11.1, due to his conviction for an
alcohol related violation in New York. The effective date of the

---

[1] The New York Legislature later reduced the .10 percent statutory to .08
percent, effective July 1, 2003. *New York Veh. & Traf.* § 1192–2, *N.Y.L.* 2002, *c.*
3. The blood alcohol content of the New Jersey statute, *N.J.S.A.* 39:4–50(a), was
lowered from .10 percent to .08 percent, effective January 20, 2004, *L.* 2003, *c.*
314, § 2.

suspension was to have been May 31, 2003, however, Pepe requested a hearing to challenge the proposed suspension. He asserted, and continues to assert, that he was prejudiced by the delay of more than four months by the State of New Jersey before it advised him that it intended to suspend his driving privileges. He contends he believed his New Jersey driving privileges had already been suspended along with his driving privileges in New York. He states that if he had been informed promptly of NJDMV's intention to suspend his privileges, he could have voluntarily accepted the suspension in order that it could have been served concurrently with his New York suspension.

The State points out that although Pepe was residing in New York at the time of his arrest and that state's suspension of his driving privileges, he had never surrendered his New Jersey driver's license. He was at all times a New Jersey licensed driver. As such, New York had the authority to suspend Pepe's driving privileges in that state, but it could not revoke/suspend the driver's license issued by his home state of New Jersey. On the other hand, as a result of the Interstate Driver License Compact, to which New Jersey and New York are parties, NJDMV is expressly authorized to suspend the driving privileges of a person convicted of driving while under the influence of alcohol in another party State. *Cf. New Jersey Div. of Motor Vehicles v. Ripley*, 364 *N.J.Super.* 343, 346–347, 835 *A*.2d 1252 (App.Div.2003) (reversing a two year suspension in New Jersey because defendant's Utah conviction of alcohol-related reckless driving pursuant to a guilty plea would not constitute a conviction of the offense of driving under the influence in New Jersey).

In pertinent part, the relevant provision of the New Jersey version of the Interstate Driver License Compact, *N.J.S.A.* 39:5D–4, provides:

(a) The licensing authority in the home State, for the purposes of suspension ... of the license to operate a motor vehicle, shall give the same effect to the [report of conviction from another party State] as it would if such conduct had occurred in the home State, shall apply the penalties of the home State or of the State in which the violation occurred, in the case of convictions for:

. . . .

(2) Driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug, or under the influence of any other drug to a degree which renders the driver incapable of safely driving a motor vehicle[.]

The six month suspension imposed by NJDMV is in accordance with the statute, *N.J.S.A.* 39:4–50, and was not redundant to the penalty imposed in New York, which involved only defendant's driving privileges within that state. *Boyd v. Div. of Motor Vehicles,* 307 *N.J.Super.* 356, 360, 704 *A.*2d 1029 (App.Div.), *certif. denied,* 154 *N.J.* 608, 713 *A.*2d 499 (1998) (upholding New Jersey suspension of license in spite of nine and one-half months delay between New York suspension of driving privileges and defendant's receipt of the New Jersey notice of intention to suspend license).

Like the delay in *Boyd, supra,* 307 *N.J.Super.* at 359, 704 *A.*2d 1029, the four month delay between NJDMV's receipt of notice of Pepe's New York conviction and its issuance of its Notice of Scheduled Suspension is unfortunate; but we are satisfied the delay in the administrative process in New Jersey did not result in substantial prejudice to defendant. *See also In re Garber,* 141 *N.J.Super.* 87, 91, 357 *A.*2d 297 (App.Div.), *certif. denied,* 71 *N.J.* 494, 366 *A.*2d 650 (1976) ("Delay will not generally affect the validity of an administrative determination, particularly where no prejudice is shown."); *cf. In re Arndt,* 67 *N.J.* 432, 341 *A.*2d 596 (1975) (where a grossly inordinate delay of twenty months occurred between defendant's refusal to submit to a breath chemical test and the issuance of a notice of proposed suspension and defendant was prejudiced by the arresting officer's poor recollection of material facts).

The suspension of defendant's driving privileges in New York commenced automatically upon his arrest on August 18, 2002. At the time of his actual conviction of that charge on December 20, 2002, the New York court ordered that his suspension there continue for two more months. He had already served five months of the ultimate six month New York suspension by the time New York notified NJDMV in mid-January 2003. Thus,

even an immediate notification by NJDMV of its intention to suspend defendant's license, as specified in the Interstate Driver License Compact, would have allowed for only a brief period of overlap between the New Jersey suspension and the one imposed by New York.

■ Pepe contends that the NJDMV's imposition of a second six month suspension, after the expiration of the six month suspension that the New York Department of Motor Vehicles imposed, subjected him to double jeopardy in violation of the United States Constitution. The State counters that double jeopardy does not apply because a driver's license suspension is neither punishment for a crime nor "excessively punitive in nature."

■ The Fifth Amendment to the United States Constitution provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." It protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction and multiple punishments for the same offense. *State v. Widmaier*, 157 *N.J.* 475, 489–90, 724 *A.*2d 241 (1999) (prohibition against double jeopardy barred State's appeal from acquittal for refusal to take breathalyzer test, because consequences of violation were equivalent to criminal penalty). Similarly, in *State v. Dively*, 92 *N.J.* 573, 586, 458 *A.*2d 502 (1983), the Court held that double jeopardy applied to motor vehicle violations and thus barred a prosecution for death by auto when the defendant had already pled guilty in municipal court to driving while intoxicated. Recently, the Court recognized that in proceedings that are quasi-criminal in nature, such as drunk driving proceedings and those involving an alleged refusal to submit to a breathalyzer test, double jeopardy principles apply and held that the standard of proof is beyond a reasonable doubt. *State v. Cummings*, 184 *N.J.* 84, 95–96, 875 *A.*2d 906 (2005).

■ Nevertheless, under the doctrine of dual sovereignty, the double jeopardy clause does not bar two states from prosecuting a defendant for the same offense. *Heath v. Alabama*, 474 *U.S.* 82, 88 106 *S.Ct.* 433, 437, 88 *L.Ed.*2d 387, 394 (1985). The Court in *Heath, supra*, 474 *U.S.* at 91, 106 *S.Ct.* at 438, 88 *L.Ed.*2d at 396, limited the contrary holding in *Nielsen v. Oregon*, 212 *U.S.* 315, 29 *S.Ct.* 383, 53 *L.Ed.* 528 (1909), on which defendant Pepe relies, to the situation in which two states derive "their concurrent jurisdiction from a single source of authority." *Nielsen* involved a conviction for operating a fishing net in the Columbia River, the boundary between Oregon and Washington, both of which had jurisdiction under a federal statute. *Nielsen, supra*, 212 *U.S.* at 319, 29 *S.Ct.* at 384, 53 *L.Ed.* at 529.

In *State v. Gruber*, 362 *N.J.Super.* 519, 527–28, 829 *A.*2d 284 (App.Div.), *certif. denied*, 178 *N.J.* 251, 837 *A.*2d 1093 (2003), reversing the dismissal of an indictment after the defendant had been prosecuted for the same conduct in New York, this court explained that, under dual sovereignty, "when a defendant's single act violates the peace and dignity of two sovereigns, by breaking the laws of each, the defendant is treated as having committed two distinct offenses. Therefore, there is no constitutional, double jeopardy bar to two separate prosecutions for the same conduct in two separate jurisdictions."

In *Commonwealth of Pennsylvania, Dep't of Transp. v. McCafferty*, 563 *Pa.* 146, 758 *A.*2d 1155, 1160–62 (2000), a Pennsylvania licensee argued, like defendant here, that double jeopardy barred a driver's license suspension in their licensing state, imposed under the Interstate License Compact. Invoking the dual sovereignty doctrine, the court said that "as long as appellees violated the sovereignty of Pennsylvania by driving with a valid Pennsylvania driver's license while under the influence of alcohol in another state, PennDOT [Department of Transportation] may impose a separate sanction beyond that imposed by the other state without violating the Double Jeopardy Clause." *Id.* at 1161.

The court reasoned that the defendant driver "did in fact violate the sovereignty of the Commonwealth of Pennsylvania," because Pennsylvania's interest extends to protecting its citizens,

> from Pennsylvania-licensed drivers who have been convicted of driving while under the influence of alcohol on the highways of our sister states. The driver's licensing procedure represents an attempt to ensure that the use of Commonwealth highways will be afforded only to persons who can and will drive safely. By operating vehicles in other states while under the influence, appellees have demonstrated their unwillingness to comply with the vehicle and traffic laws while operating a vehicle in this Commonwealth.

> [*Ibid.*]

Here also, Pepe violated the sovereignty of New Jersey, the state that issued him a driver's license, by driving while intoxicated in another state. Double jeopardy thus did not bar the imposition of two periods of suspension for the same offense.

No disputed issues of material fact existed. Hence, no evidentiary hearing was required. *Frank v. Ivy Club,* 120 *N.J.* 73, 98, 576 *A.*2d 241 (1990), *cert. denied,* 498 *U.S.* 1073, 111 *S.Ct.* 799, 112 *L.Ed.*2d 860 (1991).

Defendant's remaining contentions are without merit and require no further comment. *R.* 2:11–3(e)(1)(A) and (D).

Affirmed.